JACOB FRICK, Respondent, *v.* ST. LOUIS, KANSAS CITY, AND
NORTHERN RAILWAY COMPANY, Appellant.

### March 26, 1878.

1. The jury may make all reasonable inferences from facts in evidence; and where there is evidence to support a verdict, it will not be disturbed on the suggestion that it is against the weight of evidence.

2. Though it is unlawful for one not connected with a railroad to walk upon its tracks, and it is presumed that every one will obey the law, yet this will not relieve the railroad corporation from the duty of keeping a careful lookout while running its trains upon the streets of a city.

3. In an action for damages to the person, occasioned by being run over by a railroad car, the material question to be determined is, what was the immediate cause of the final act producing the injury; and where plaintiff's negligence is a remote condition, and that of defendant the *causa causans*, plaintiff's negligence is no bar to a recovery.

4. What is ordinary prudence depends, not upon abstract propositions, but upon the facts surrounding each case.

5. A two-year-old child, while walking upon a railroad track, was injured by the train backing over it; there was evidence tending to show that no one

on the train saw the child, and that if some one on the train had been on the lookout the accident could have been avoided. *Held,* that it was not error to refuse to instruct that defendant was not liable for the damages occasioned by the child being run over.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

WELLS H. BLODGETT, for appellant: The burden of proof of negligence is wholly upon plaintiff, and negligence cannot be presumed from the fact that an accident and an injury have occurred. — *Schultz* v. *Railroad Co.*, 37 Mo. 32. The child was upon defendant's track in violation of law. — Wag. Stat. 311, sec. 43. It is presumed that every one will obey the law. — 2 Keyes, 161; *Pennsylvania R. Co.* v. *Hummell*, 44 Pa. St. 377; *Brown* v. *Lynn*, 7 Casey, 510; *Reeves* v. *Railroad Co.*, 6 Casey, 454. Defendant's instruction in the nature of a demurrer to the evidence should have been given. — *Boland* v. *Railroad Co.*, 36 Mo. 491; *Keys* v. *Railroad Co.*, 65 Pa. St. 276; *Bannon* v. *Railroad Co.*, 24 Md. 125; *Maher* v. *Railroad Co.*, 64 Mo. 276; *Railroad Co.* v. *Spearen*, 47 Pa. St. 304; Shear. & Redf. on Neg., secs. 48, 48*a*, 49; 40 Ind. 545; 49 Ind. 154; *Railroad Co.* v. *Snyder*, 24 Ohio St. 670; *Wright* v. *Railroad Co.*, 4 Allen, 283. Negligence and contributory negligence. — *Isabel* v. *Railroad Co.*, 60 Mo. 482; *Karle* v. *Railroad Co.*, 55 Mo. 484; *Brown* v. *Railroad Co.*, 50 Mo. 461. Measure of damages. — Shear. & Redf. on Neg., sec. 608; *Gillegan* v. *Railroad Co.*, 1 E. D. Smith, 453; Sedgw. on Dam. (6th ed.) 545, note 3.

McGAFFEY & STEBER, for respondent: Where the negligence of defendant is proximate, and that of plaintiff remote, an action for damages may be sustained though plaintiff is not entirely without fault. — *Hulsenkamp* v. *Railroad Co.*, 37 Mo. 552; *O'Flaherty* v. *Railroad Co.*, 45 Mo. 70; *Morrissey* v. *Ferry Co.*, 43 Mo. 383; *Boland* v. *Railroad Co.*, 36 Mo. 484; *Railroad Co.* v. *Stout*, 1 Cent. L. J. 202; *Adams* v. *Ferry Co.*, 27 Mo. 95. Negligence and contribu-

tory negligence. — *Brown* v. *Railroad Co.*, 50 Mo. 467; *Whalen* v. *Railroad Co.*, 60 Mo. 323; *Wyatt* v. *Railroad Co.*, 55 Mo. 485.

Hayden, J., delivered the opinion of the court.

This is an action to recover damages for an injury to a female child of the plaintiff, who lost an arm and leg by being run over by a train of the defendant. The injury was received within the limits of the city of St. Louis, but not at a point where the defendant's track crossed any street or public place where persons had a right to pass. The plaintiff lived about two hundred feet from the track, and it appears that the child, whose age was about two and a half years, was discovered on, or crawling upon, the track; but how it got there did not appear. The plaintiff's evidence tended to show that, while at the crossing at Grand Avenue, a witness saw the train, and then discovered the child in the middle of the track; that this witness, a woman, and a neighbor of the plaintiff, cried, " Stop, stop ; there is a child on the track ! " and ran down the track towards the child; that while she was yet at a considerable distance from the child, the cars ran over it. It appeared that the train was a construction train, consisting of ten flat-cars, a caboose, a tender, and an engine ; that the engine was in the rear, pushing the cars ; and that the three front cars were loaded with stones, which were piled upon their platforms. The witness referred to, Mrs. Hahn, testified that she continued on the track until she met the train ; that as she ran down the embankment she heard the whistle, and that the train then stopped at once ; that while she was running down the track towards the child, the men on the train motioned to her to get off the track ; that the accident happened at about nine or ten o'clock in the morning ; and that there was nothing to prevent persons on the train from seeing the child on the track, except the earth or stones with which the cars were loaded. There was testimony of the defendant

tending to show that the train was running westward, and that a brakeman of defendant was at the west, or forward, end of the front flat-car, as it approached the child ; that the train was running at from four to five miles an hour ; that this brakeman discovered the child in the act of crawling upon the track, when the child was about the length of a car and a half, or two cars and a half from him ; that when he saw the child, he gave the signal to stop at once ; that he then set his brake on the front car, and on the next car ; that the engineer responded to his signal, called for brakes, and stopped the train as soon as he could.

The instructions, so far as necessary, are noticed below. The jury found for the plaintiff in the sum of $4,585, of which the plaintiff remitted $1,500. The case is here by appeal.

It is insisted that the demurrer to the evidence should have been sustained. But, upon the facts, it appears that the essential question in this case was as to the weight of evidence, and addressed itself, after the verdict, to the trial court. It was for the jury to make all reasonable inferences. Giving the appellant the full benefit of the rule that only such, and not forced or violent, conclusions are permitted, it cannot be denied that there was evidence tending to prove the plaintiff's case. Take, for instance, the point upon which appellant especially insists, — that the testimony shows that it would have been doing well to stop a train in from three hundred to four hundred feet, and that Mrs. Hahn says that when she first saw the child the front car was within one hundred and fifty feet of where the child was. In the first place, this one hundred and fifty feet is no exact measurement. It is a woman's judgment as to distance. Then Kane testifies, for the plaintiff, that if the train had plenty of brakemen, and the engineer knew of it, witness thinks the train could have been stopped in forty or fifty feet. It is true that, upon cross-examination, he testified differently. But on cross-examination he was

not correcting an error of fact, but, under the pressure of leading and argumentative questions put to him, giving a different opinion. He was an employee of the railroad company; and whether his opinion as expressed in the first instance or upon cross-examination was better, it was for the jury to say. It appears, moreover, according to the testimony of the appellant's witnesses, that the distance within which a train can be stopped depends on many circumstances, — as, on the condition of the rails, of the brakes, on the grade, on the speed, etc. Thus the whole question is so involved in circumstances as to make it eminently a question for the jury. Again, compare the fact that Kane testifies that from Grand Avenue, where Mrs. Hahn started to run, to the corner of the fence where the child was on the track, was a little over five hundred feet, with his testimony that Mrs. Hahn was about three or four car-lengths from the child when it was run over. From this the jury may have inferred that there was ample time in which to stop the train; especially as, if the brakeman saw the child when it first got upon the track, he must have seen it at least as soon as Mrs. Hahn did.

But the conflict of evidence, making the question one for the jury, appears in other ways. If Goodell, the brakeman, is to be believed, the appellant was without fault. But if Mrs. Hahn saw the child upon the track when and where she says she did, Goodell is not to be believed. Again, Mrs. Hahn says that when she ran down the bank, and the engine whistled and the train stopped, she said to the men on the train, "Why didn't you stop before you run over the child?" The men replied, "What child?" and jumped down and looked for the child. The testimony of Mrs. Hahn, as well as Kane, tends to show that there was no one on the rear end (or front end, as it was running) of the first car, and that the stones piled up would have prevented a man upon the further end of the car from seeing the child. From the evidence, the jury may have believed

that those on the train of cars never saw the child until it was run over.

The appellant, indeed, claims that as the statute provides that it shall not be lawful for a person, other than those connected with or employed upon a railroad, to walk along its track, except where the same shall be laid along public roads or streets, the appellant, in running its trains, has a right to act on the presumption that persons will not violate the laws. What this general proposition means as applied to the present case it is not easy to discover. It can no doubt be found enunciated in decisions; but if, as applied to this case, it means that a railway company may run its cars through the streets of a populous city, with no one upon the lookout, or in a position to observe what is ahead, by reason of a presumption that every man will obey the laws, it is.safe to say that no such conclusion follows from the premises. It is little to the purpose to cite from the books such abstractions as that there is no duty resting upon any one to anticipate wrongful acts in others, or to take precautions against them; that every one has a right to presume that no one will violate the law. These are not propositions applicable to the law of torts; nor, properly speaking, are they propositions of law at all. The complications of civil rights, as recognized by the law of negligence, do not admit of any such summary disposition as is implied by these sweeping assertions. So, too, the propositions that persons lawfully using a railroad track are under no obligations to take precautions against possible injuries to intruders upon it; that a railroad company has a right to presume, and to act upon the presumption, that no one will intrude upon its track, are true in law only so far as a limitation to the facts of particular cases makes them so. They serve rather to obscure than to throw light upon questions of contributory negligence, and, when embodied in instructions to juries, their chief effect is to divert the mind from the true issues. The negligence of the plaintiff

may be entirely immaterial; and one principal object of the trial is to ascertain if it is so. When this is ascertained, the plaintiff's negligence cuts no legal figure. Accordingly, a person's being an intruder upon the track may have no significance in law. The purpose of the legal investigation being to get at the real causes of the injury, and the rule of law being that remote conditions are unimportant, the essential question is, What are the acts which, in point of time and causation, group themselves immediately around the final act producing the injury? If, as in the present case, a child is found upon the track in a city, and, upon the supposition of there being a man upon the train properly upon the lookout, the train may be stopped and injury to the child avoided, then the assumed negligence of the child's parents is but a remote condition. In case of injury to the child from failure of the train to stop, owing to the absence of a man on watch, the *causa causans*, or legal cause of injury, is the failure of the company to adopt a precaution which ordinary prudence suggests.

What is ordinary prudence depends, not upon abstract propositions like those above referred to, but upon the facts surrounding the case. Experience shows that in populous cities numbers of persons will be found upon railway tracks. Infants, blind men, insane and very aged persons may be there without fault upon their parts. The accidents of life may and do bring there persons in full possession of their senses. It is immaterial, so far as the duty of a railway company to adopt precautions demanded by ordinary prudence is concerned, how the persons come there. The well-settled rule as to contributory negligence is, that though the plaintiff has been guilty of negligence, and though such negligence may have contributed to the injury, yet if, by the exercise of ordinary care, the defendant could have avoided the result, the plaintiff's negligence is immaterial. This doctrine rests upon the basis that he whose act is the efficient cause of the injury should be held liable; and that,

even as against wrong-doers, ordinary care is a primary duty. To none is it more essential that this rule be applied than to railway companies; and common regard for human life demands that its application should be insisted upon when they are running their trains through cities. Here the testimony tends to show that a watchman, properly placed, could have seen and signaled in time to have enabled those on the train to save the child.

The instruction given by the court below did not, as the appellant claims it should have done, confine the inquiry to the conduct of the men on the train after they became aware of the dangerous situation of the child. In refusing to so confine it, the action of the court was correct. The instruction told the jury that if the persons in charge of the train were exercising ordinary care in running, conducting, and managing the same, and that, after the dangerous situation of the child was discovered by them, the train could not have been stopped in time to prevent the injury complained of, then the plaintiff could not recover. The appellant cites and relies upon the following ruling from the case of *Isabel* v. *Railroad Company*, 60 Mo. 482: "In order to make a defendant liable for an injury where a plaintiff has also been negligent or in fault, it should appear that the proximate cause of the injury was the omission of the defendant, after becoming aware of the danger to which the plaintiff was exposed, to use a proper degree of care to avoid injuring him." This is undoubtedly correct doctrine, as applied to the facts of that case. There was there no evidence tending to show negligence in the railway company prior to the time when the person or object was discovered on the track. In *Maher* v. *Railroad Company*, 64 Mo. 276, also relied on, neither the engineer nor fireman saw any object upon the track. Speaking of them, the court says: "It may be said that they might have seen him [the person upon the track], but there is no evidence that they did, and no evidence that their failure to see him was the

result of negligence on their part." There was no evidence, in those cases, tending to show a train running through a city with no one on guard. The basis on which the opinion proceeds in both cases is that the engineer and fireman were at their posts, upon the lookout, at places where they could see the track in the direction in which the trains were advancing. In the case at bar, there was testimony tending to show that no one was so placed upon the train as to see the child as she stood upon the track, as the train backed towards her, and that, if some one had been so placed as to see the track and to signal, the injury could have been avoided. The remarks of the court in the case last quoted (64 Mo. 276), and in the case of *Karle* v. *Railroad Company*, 55 Mo. 483, in regard to the precautions to be taken in running trains through populous cities, are directly opposed to the view here insisted upon by the counsel for the appellant. See also *Hicks* v. *Railroad Co.*, 64 Mo. 439 ; *Harlan* v. *Railroad Co.*, 65 Mo. 22.

The instructions fairly declared the law applicable to the case ; and those given for the appellant contained the necessary qualifications of those given for the respondent. The jury were told that, before the plaintiff could recover, he must prove that his child was injured in direct consequence of the negligence of the persons in charge of the train ; that, in determining the question whether the plaintiff and his wife were guilty of negligence, the jury should take into consideration the fact that they permitted the child to go unattended upon the track of defendant's railroad, where they knew trains were frequently passing ; and that if they were guilty of negligence which directly contributed to produce the injury complained of, the finding must be for the defendant. It is hardly necessary to say that the court properly refused to instruct the jury that, under the pleadings and evidence, the plaintiff could not recover unless the child was wantonly or purposely injured. *Hicks* v. *Railroad Co.*,

64 Mo. 430.   The question was not of wanton or intentional injury, but of the proximate cause.

The case was fairly tried, the questions were peculiarly for the jury, and their verdict will not be disturbed.   The judgment is affirmed, with the concurrence of all the judges.