JOHNSON, Administrator, vs. THE CHICAGO & NORTHWESTERN
RAILWAY COMPANY.

*May 13 — May 27, 1880.*

*Railroads: Negligence: Court and jury.*

The operation of a railway over and along public highways in a village or
city being necessarily attended with great peril to human life and prop-
erty, railway companies are held to the utmost care on the part of their
servants to avoid inflicting injury under such circumstances. And in this
action against a company for the killing of a child of six years by a train
while crossing a city street, a judgment of nonsuit is reversed on the
ground that the questions of negligence on defendant's part, and con-
tributory negligence of the child or its parents, should have been sub-
mitted to the jury, on the evidence.

APPEAL from the Circuit Court for *Calumet* County.

Action for an injury to plaintiff's intestate, which resulted in
his death, and which is alleged to have been caused by defend-
ant's negligence. After plaintiff's evidence was in, the court,
on defendant's motion, ordered a nonsuit. Plaintiff appealed
from the judgment.

Submitted for the appellant on the brief of *Tracy & Bailey.*

Brief for the respondent by *F. J. Lamb,* and oral argument
by *Mr. Lamb* and *Wm. F. Vilas.*

COLE, J. The nonsuit can only be sustained upon the
grounds, *first*, that the jury would not have been warranted in
finding, upon the evidence, negligence upon the part of the
servants of the defendant; or *second*, that the evidence did
show negligence on the part of the boy, or his parents, which
contributed to the injury. A glance at the testimony will show
that the nonsuit was wrong upon either ground. The boy was
about six years old, and, as we understand the testimony, was
killed at a place where the railroad track crossed a public street
in Fort Howard. The highway was one much traveled by

little children, who crossed the track at that place daily on their way to school. The boy himself attended school, but, as his parents lived north of the crossing, he had no occasion to go along that street in returning from or going to school. But it appears that the children of about fifty families, living on the south side of what is spoken of in the testimony as the " slough bridge," have to go over this railroad crossing in order to reach the school-house on the west side of the track; and it is very obvious, from all of the surroundings, that the crossing was one which required great vigilance and care on the part of the servants of the company to prevent injuries to persons in the street while running its engines and cars across the street at that place.

The jury might reasonably have found that the engineer did not exercise the prudence and care required under the circumstances; that he was guilty of negligence in not looking out of the window on the side of the engine to see whether there was any person in the street at the crossing who was in danger of being injured by collision. A proper regard for the lives and safety of persons on the street, at that place, would seem to impose at least that degree of care and vigilance upon the servants of the company. If the engineer had even looked out of his window, as he approached the crossing, possibly he might have seen the little boy playing in the highway, and have stopped his engine in time to have avoided the accident. At all events, the question should have been submitted to the jury to determine whether, under the circumstances, the servants of the defendant exercised reasonable vigilance and care to avoid inflicting injury upon persons in the street at that crossing.

The evidence was not so clear exculpating the defendant as to justify the court in withdrawing the case from the consideration of the jury. The learned counsel for the defendant assumed, in his argument, that the evidence showed that the boy was killed upon the track northward, towards the switch,

at quite a distance beyond the limits of the highway, where he had no right to go. But we do not so understand the testimony. Mrs. Vandenburg, who saw the boy when he was struck by the engine, testified, in substance, that he was upon the railroad track *in the highway*, playing with something in the sand. She says she saw the boy, with another, jump from the foot-board on the back of the engine as it passed northward across the highway, when "he seemed to lie down in the *street*, and fuss around in the sand as if playing with something, and when he heard the bell ringing he looked up and turned around, and tried to get out of the way. He turned about and saw the other little boy, his playmate, get off on the other side of the track. He turned to that side, and tried as if he wanted to get over to the other side from the side he was on, and the engine came and killed him before he could get out of the way."

This was the only witness sworn who was able to state where the boy was when he was struck by the engine, and she distinctly says that he was in "the middle of the road, right in the track between the two rails." But he was upon the highway, where he had a lawful right to go, and while there, yielding to a "childish instinct," or impulse, had stopped for a moment to play with something in the highway which attracted his attention. And had the engineer been vigilant and careful, and looked out of the window of the locomotive as he approached the crossing, it is barely possible he might have seen the boy in time to have saved his life by stopping his engine. It seems needless to remark that the operation of a railway over and along public streets in a village or city is necessarily attended with great peril to human life and property, especially under the circumstances disclosed in the testimony in this case; consequently the utmost care should be exercised by the servants of the corporation to avoid injury. *Butler v. Mil. & St. Paul Railway Co.*, 28 Wis., 487.

So in respect to the other question, namely, whether the boy

or his parents were guilty of contributory negligence: this also should have been submitted to the jury upon the evidence. Many children of as tender age as this boy was, are permitted by their parents to be in the public streets, or sent alone to school. It cannot be said, as a matter of law, that in such cases parents or guardians fail to exercise due care and prudence in looking after their children or wards. " Legal negligence is the omission of such care as persons of ordinary prudence exercise and deem adequate to the circumstances of the case." GROVER, J., in *Mangam v. Brooklyn Railroad Co.*, 38 N. Y., 455–7. It was for the jury to say whether the parent or this child — regard being had to his age and intelligence — used that degree of care required under the circumstances. *Thurber v. Harlem B. M. & F. R. R. Co.*, 60 N. Y., 326; *Ewen v. C. & N. W. Railway Co.*, 38 Wis., 614.

*By the Court.* — Judgment reversed, and new trial ordered.