TOWNLEY, by guardian ad litem, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 25 — December 13, 1881.*

RAILROADS: NEGLIGENCE: COURT AND JURY. *(1) Duty of looking out along track. (2) The question of negligence generally for the jury. (3) Certain evidence bearing on the question of negligence, improperly rejected. (4) Ordinary care defined; varies with age, etc. (5) Nonsuit improperly granted. (6) Certificate that bill of exceptions contains all the evidence.*

1. A railroad company is bound to provide for a careful lookout in the direc- .tion in which a train is moving, in places where people, and especially where children, are likely to be upon the track.

Townley, by guardian ad litem, vs. The Chicago, Mil. & St. P. R'y Co.

2. Negligence is generally a question of fact for the jury; and upon the evidence in this case (stated in the opinion), it was error to take the question of defendant's negligence from the jury, by nonsuiting the plaintiff.

3. Although the statute (sec. 1811, R. S.) makes it unlawful for a person not connected with or employed upon a railroad, to walk along the track thereof, "except when the same shall be laid along public roads or streets," yet where the question is whether a person injured while walking upon a railroad track was guilty of a want of ordinary care, it is error to reject evidence showing that many persons, men, women and children, had, for years before the accident in question, been in the habit of passing, daily and hourly, up and down in the same pathway on which the injured person was passing — since such evidence would tend to show a license, or to repel the inference of a want of ordinary care on plaintiff's part, and also to show a lack of such care on defendant's part as the facts required.

4. Ordinary care is such care as would ordinarily be exercised by persons of the age and in the situation of the person sought to be charged with negligence; and the fact that the person injured was a child of tender years, is to be considered in determining the question of contributory negligence.

5. The evidence in the record *held* not sufficiently conclusive of contributory negligence to justify a nonsuit.

6. A certificate to the bill of exceptions stating that "the foregoing is the *substance of all* the testimony given on the trial," *held* sufficient to show that there was no *other* evidence to justify the nonsuit.

APPEAL from the Circuit Court for *Dane* County.

The case is thus stated by Mr. Justice CASSODAY:

"Action to recover damages for an injury resulting in the loss of a foot of the plaintiff, *Rosa Townley,* caused by the alleged negligence of the defendant, March 10, 1879. At the time of the injury, *Rosa* was seven years of age, and had, during the day, been attending a school on Washington avenue, in the city of Madison, leading directly from the capitol to the east end of the passenger depot of the Prairie du Chien division of the defendant's road. *Rosa's* home seems to have been some forty or fifty rods west of the depot, and a little north of the defendant's track. Immediately south of the depot is the main track, and upon the north side of the depot there are four side tracks; the two nearest the depot running together about 240 feet west of the depot, and from

thence on one track about 100 feet to the main track. The third and fourth tracks from the depot, known as the coal and lumber tracks, run together at the switch about 360 feet west of the depot, being at the place where *Rosa* was injured, and which, for convenience, is called 'switch B,' and from thence on one track 64 feet to the main track, which, for convenience, is called 'switch A.'

" Along the north side of the north side track there is a traveled road or wagon track, running from Washington avenue, near the east end of the depot, west across the end of Francis street, and thence west to the end of Lake street, on the west side of which *Rosa* lived. On leaving her school on the day in question, *Rosa* passed down the avenue, across the side tracks, onto the platform at the east end of the depot, and from thence, along the platform on the south side of the depot, west, onto the walk or 'switch path,' so called, between the main and side tracks west of the depot. While she was on the 'switch path,' the freight train in question passed from east of the depot, along the side track nearest the depot on the north, and from thence onto the main track, until the hind end of the hind car was about the distance of one and a half cars west of 'switch A,' when the train stopped. There were eight freight cars in the train, the four in front being loaded, and the four in the rear being empty; and the brakeman and switchman were both on the train as it passed west, the former seeing and recognizing *Rosa* on the 'switch path' as he passed by her.

" Immediately after the train had passed, *Rosa* walked west along the 'switch path' to the junction of the side track with the main track, and then, turning a little northward, crossed the first side track, and then continued in about the same direction, until she reached the junction of the coal and lumber tracks at or near 'switch B,' and was crossing the same, until she came to the north rail of the coal track, when her left foot got caught between that rail and the guard rail,

and she was unable to extricate it. 'Switch A,' something over 64 feet west of her, being turned, the train started back, and the four rear cars, being uncoupled, ran onto the north side track, and from thence east to 'switch B,' and there turned onto the coal track, and crushed her foot, being so caught."

On the trial, the above facts, and others mentioned in the opinion, having been shown by the plaintiff's witnesses, and the plaintiff having rested, the court, on defendant's motion, rendered a judgment of nonsuit; from which the plaintiff appealed.

For the appellant there was a brief by *Sloan, Stevens & Morris*, and oral argument by *Mr. Sloan*. To the point that the defendant was liable for negligence notwithstanding the fact that the person injured was passing at the time through its yard, they cited *Delaney v. M. & St. P. Railway Co.*, 33 Wis., 67; *Johnson v. Railway Co.*, 49 id., 529; *Cordell v. Railroad Co.*, 70 N. Y., 119; *Driscoll v. Lime & Cement Co.*, 37 id., 637; *Kay v. Pennsylvania Railroad Co.*, 65 Pa. St., 269; *Isbell v. Railroad Co.*, 27 Conn., 404; *B. & O. Railroad Co. v. Trainor*, 33 Md., 542; *Ill. C. Railroad Co. v. Hammer*, 72 Ill., 347; *Isabel v. Railroad Co.*, 60 Mo., 475; *Railroad Co. v. Stout*, 17 Wall., 657.

*Melbert B. Cary*, for the respondent, argued, among other things, 1. That it was negligence for plaintiff to walk where she did, there being no necessity for it, and that way home being longer than the traveled road north of the lumber track. She testified that she was in the habit of coming home from school that way. If she was an infant and not *sui juris*, the fact that her parents allowed her to follow the habit of coming from school in that way, was contributory negligence, under the rule in *Ewen v. Railway Co.*, 38 Wis., 613, and *Johnson v. Railway Co.*, 49 id., 529. See *Stillson v. H. & St. J. Railroad Co.*, 7 Cent. L. J., 107; *Matze v. N. Y. C. & H. R. Railroad Co.*, 1 Hun, 421; Lacey's R. R. Dig., p. 464,

§ 193.   2. That, as plaintiff was a trespasser upon defendant's private grounds, she could not recover without proof of gross negligence on defendant's part. In *Delaney v. M. & St. P. Railway Co.*, 33 Wis., 67, it appeared that it was necessary for the plaintiff in that case, and other persons living south of the railroad, to cross the tracks in order to reach a public street to procure water, and in order to pass from said street to their homes, and that the company had practically licensed them to do so. Both the circuit court and this court therefore held that Delaney was not a trespasser. In this case there was nothing to justify the choice of the dangerous switch path instead of the traveled road, which is perfectly safe; nor was any license shown, but on the contrary it appears that the company did not countenance the use of this switch track by outsiders, and had ordered them away from there. The questions ruled out by the court below related solely to the fact whether people had trespassed upon these grounds; and it is well settled that no amount of trespassing can make a user. Most of the authorities go so far as to hold that the rule of non-liability except for gross negligence should be applied even as against licensees. *Morgan v. Pennsylvania Railroad Co.* (per WALLACE, U. S. Dist. Judge; N. Y.), 7 Fed. Rep., 78; *Johnson v. B. & M. Railroad*, 125 Mass., 75; *Morrissey v. Eastern Railroad Co.*, 126 id., 377; *Hestonville P. R'y Co. v. Connell*, 88 Pa. St., 520; *P. & R. Railroad Co. v. Hummell*, 44 id., 375–80; *Sutton v. N. Y. C. & H. R. Railroad Co.*, 66 N. Y., 243; *Nicholson v. Erie Railway Co.*, 41 id., 525; *I. C. Railroad Co. v. Godfrey*, 71 Ill., 500, 507; *Ill. C. Railroad Co. v. Hetherington*, 83 id., 510.

CASSODAY, J.   Was there an absence of negligence on the part of the defendant? There is evidence tending to show, in effect, that the yard-master saw *Rosa* standing still on the track at or near "switch B," the place where she was caught, before the cars started back, and that he was, at the time,

about 220 feet east of her, with the cars over 100 feet west of her, and that he, knowing she was in danger, hallooed to the train men at the time, and again when the cars got within about sixty feet of her, or opposite "switch A," where the switchman stood; that she was on the same side of the track as the lever of "switch A;" that when the train stopped going west, with the rear end of the rear car some fifty feet west of "switch A," the brakeman got down from the top of the cars and uncoupled the four rear cars, and then got upon the west end of the uncoupled car furthest from the little girl, and took hold of the brake at the west end of that car, with his face towards the west; that in the mean time the switchman had got down from the top of the cars and passed to the lever of "switch A," some sixty-four feet west of where the little girl was injured, and then turned that switch so as to send the four uncoupled cars onto the north side track, and thence onto the coal track at or near "switch B," where the little girl was injured; and that thereupon, and after looking to see if "switch B," was set so as to turn the loose cars onto the coal track, the switchman signalled the engineer of the train to back the same, which he did.

From portions of the testimony it seems to be a little uncertain whether the signal to back the train was before or after the switchman looked down the track to "switch B." He does testify, in effect, that when he looked back — down the track — to "switch B," he did not see the little girl; that she might have been on this side of the track, and he would not have noticed her, as he would be watching his switch,— the lumber-yard switch that goes onto the coal track; and that when he first saw her her hands were up, and the end of the car within a half car length of her. The switchman also testified: "It is my duty to look up on that track to see if it is clear, and if it is perfectly safe for the cars to come back; that is what I am there for. And after I see that it is safe, I give the signal to back. It is my duty to see that the track

is clear; that there is nobody on it. That is what I did this time." With this measure of duty resting upon the servants of the defendant, at the time and place in question, we cannot hold, as a matter of law, upon the evidence in the case, that the defendant was free from negligence in committing the injury. If this little girl, seven years of age, was at or near "switch B," with her foot caught between the rail and the guard, while the train was standing still, and it was his duty to see that the track was clear and nobody on it before giving the signal for the train to back, then certainly there was some evidence of failure of duty on his part in not discovering her and removing her from the track before giving the signal.

We do not wish to be understood as expressing any opinion on the facts, except that, on the question of defendant's negligence, there was evidence sufficient to go to the jury. Whether the little girl was in fact on the track at the time of turning the switch or giving the signal, or whether the switchman ought to have seen her before giving the signal, or immediately after, and then have given the alarm sooner than he did, or have rescued her by his own efforts, or whether the yardmaster should have gone to her relief when he first saw she was in danger, or whether the brakeman acted with all the circumspection which his duty required, were, in our opinion, all questions peculiarly within the province of the jury.

In *Ireland v. Plank Road Co.*, 13 N. Y., 533, JOHNSON, J., said: "It by no means necessarily follows, because there is no conflict in the testimony, that the court is to decide the issue between the parties as a question of law. The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as a matter of law. On the contrary, it is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered.

In such cases the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement, which is consistent throughout."

"Generally, what is and what is not- negligence is a question for the jury. When the standard of duty is a shifting one, a jury must determine what it is, as well as find whether it has been complied with." *Pennsylvania Railroad Co. v. Barnett*, 59 Pa. St., 263.

"Negligence, in one sense, is a quality attaching to acts dependent upon and arising out of the duties and relations of the parties concerned, and is as much a fact to be found by the jury as the alleged acts to which it attaches by virtue of such duties and relations.". *T. & P. Railway Co. v. Murphy*, 46 Texas, 366. See also *Smith v. Fletcher*, L. R., 9 Exch., 64; *Bridges v. Directors of N. L. Railway Co.*, L. R., 7 E. & I. App. Cases, 213; *Kenworthy v. Ironton*, 41 Wis., 647; *Langhoff v. Railway Co.*, 19 Wis., 489; *Spencer v. Railroad Co.*, 17 Wis., 487; *Thurber v. Railroad Co.*, 60 N. Y., 326; *Frick v. Railway Co.*, 5 Mo. App. Cases, 435.

In *Langhoff v. Railway Co.*, DIXON, C. J., said: "It [negligence] is not a fact to be testified to, but can only be inferred from the *res gestæ* — from the facts given in evidence. Hence it may, in general, be said to be a conclusion of fact to be drawn by the jury under proper instructions from the court. It is always so where the facts, or, rather, the conclusion, is fairly debatable, or rests in doubt."

Judge COOLEY discusses this question in his work on Torts, and concludes: "If the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the presence or absence of due care, the judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute." Page 670.

We are clearly of the opinion that the facts disclosed in the record do not bring the case within the rule authorizing the court to take the question of the defendant's negligence from the jury. It seems to be pretty well settled that a railroad company must provide for a careful lookout in the direction that the train is moving, in places where people, and especially where children, are liable to be upon the track. If they do not, and a person has been injured, then the company may, in the absence of contributory negligence, be held liable. *Butler v. Railway Co.*, 28 Wis., 487; *Ewen v. Railway Co.*, 38 Wis., 613; *Farley v. Railway Co.*, 9 N. W. Rep. (Iowa), 230; *Frick v. Railway Co.*, 5 Mo. App., 435; *Cheney v. Railroad Co.*, 16 Hun, 415.

2. Was the plaintiff guilty of contributory negligence? It is urged that the plaintiff, *Rosa*, was violating the last clause of section 1811, R. S., in walking upon the "switch path," and in attempting to cross the side tracks as she did, and that therefore there can be no recovery. The clause does make it unlawful for a person, not "connected with or employed upon the railroad, to walk along the track or tracks of any railroad, except when the same shall be laid along public roads or streets." This section seems to have been designed to prevent persons walking upon or between the rails of the track, or so near thereto as to be in danger of being struck by passing trains; but we do not think it is applicable to persons passing directly from Washington avenue in question onto the platform of the depot in question, and thence along that platform onto the "switch path," and from there across the side tracks to the public streets beyond. We must, therefore, determine this appeal as though that provision had not been enacted, for the exception in case the track is laid along public roads or streets is to have some effect.

Under a similar statute in Missouri it has quite recently been held that "though it is unlawful for one not connected with a railroad to walk upon its tracks, and it is presumed that every one will obey the law, yet this will not relieve the

railroad corporation from the duty of keeping a careful look-out while running its trains upon the streets of a city." *Frick v. Railway Co.*, 5 Mo. App., 435. With that proposition we fully concur. See also *Daley v. Railroad Co.*, 26 Conn., 591. The brakeman testified in effect that he had seen the little girl in the yard before, and had seen other children there, and had ordered them off the track; that there was a pathway where the little girl went; and that since he had worked there he had seen people going across the tracks onto the streets — had seen them all the time for the last seven years, men, women and children. The plaintiff also offered to prove, in effect, that persons living near the track west of the depot, and other people, men, women and children, had, for some years immedi-ately before the accident, been in the habit of passing back and forth, up and down, on the same pathway and in the same direction where the little girl went at the time she was hurt, and that they had been so accustomed to pass, daily and hourly, for several years; all of which was excluded, and exceptions taken.

This excluded evidence tended to prove an implied consent or license on the part of the defendant that persons might pass on foot along the " switch path" and across the side tracks to the public streets; and the mere fact that other children had been ordered off the track would not conclusively prove that no such consent or license had been granted. If such custom existed, and men, women and children were daily and hourly passing over the same pathway, it certainly had an important bearing, not only upon the question whether *Rosa* was guilty of contributory negligence at the time, but whether the de-fendants were exercising ordinary care at the time. If men, women and children were daily and hourly passing, the ser-vants of the defendant in charge must have known the fact, and hence were called upon to exercise more vigilance and care than though such passage seldom occurred. If all classes of people, men, women and children, and especially those living

up the track in the vicinity of *Rosa's* home, were accustomed daily and hourly to pass over this pathway, then can we say, as a matter of law, that there was a lack of ordinary care in *Rosa* in attempting to do the same thing? Certainly not, unless her tender years were such as to impute negligence to her parents for allowing her to be upon the track at all.

The case is quite similar in principle to *Johnson v. Railway Co.*, 49 Wis., 529, where the boy killed was only six years of age, and the judgment of nonsuit was reversed. It has frequently been held that a child of tender years is not to be held to the same rule of care and diligence in avoiding the consequences of the negligent or unlawful acts of others, that is required of persons of full age and capacity. *Pennsylvania Railroad Co. v. Kelly*, 31 Pa. St., 372; *Rauch v. Lloyd*, 31 Pa. St., 358; *Glassey v. Railway Co.*, 57 Pa. St., 172; *P., A. & M. Pass. Railway Co. v. Caldwell*, 74 Pa. St., 421; *East Saginaw City Railway Co. v. Bohn*, 27 Mich., 503; *B. & I. Railroad Co. v. Snyder*, 18 Ohio St., 399; *Robinson v. Cone*, 22 Vt., 213; *Railroad Co. v. Stout*, 17 Wall., 657; *Boland v. Railroad Co.*, 36 Mo., 484; *C. & A. Railroad Co. v. Gregory*, 58 Ill., 226; *McMillan v. Railroad Co.*, 46 Iowa, 231.

In *Lynch v. Nurdin*, 1 Q. B., 29, the plaintiff was but seven years of age, and at the time of the injury was committing a trespass by getting upon the defendant's cart hitched to his horse, and which had been negligently left by him in the street unattended; and Lord DENMAN, C. J., said: "Ordinary care must mean that degree of care which may reasonably be expected from a person in the plaintiff's situation, and this would evidently be very small, indeed, in so young a child. But this case presents more than the want of care; we find in it the positive misconduct of the plaintiff — an active instrument towards the effect." Page 36. He then reviews the authorities, and concludes that "for these reasons we think that nothing appears in the case which can prevent the action from

Townley, by guardian ad litem, vs. The Chicago, Mil. & St. P. R'y Co.

being maintained. It was properly left to the jury, with whose opinion we fully concur." For these reasons we think the evidence offered was improperly excluded, and that no such want of care was shown on the part of the plaintiff as to justify the court in taking the case from the jury.

3. But counsel contend that the bill of exceptions is not certified to contain all the evidence, and that we must therefore presume that there was other evidence, not before us, which justifies the nonsuit. The certificate is in these words: "The foregoing is the *substance of all* the testimony given on the trial of said action." The learned counsel for the railroad company has referred us to quite a number of Iowa cases holding similar certificates insufficient. But this is a question of practice, and, with great deference for the Iowa court, we feel justified in following our own decisions. Besides, we think the distinction made by that court is a little too refined for practical purposes. Here, the trial judge certifies, in effect, that the bill of exceptions contains "the substance of all the testimony" upon which he granted the nonsuit, and yet we are asked to find that he must have granted it upon some other testimony. To so hold would, in our judgment, disregard substance for mere form. It would be wholly impracticable, if not impossible, for any one to procure an exact transcript of every particle of testimony taken upon a trial. It must, at most, be "the substance of all the testimony," and a certificate going further must necessarily trench upon the impracticable, if not the impossible. This, we think, is in harmony with the decisions of this court, if not supported by them; and we must therefore hold that, practically, the bill of exceptions is certified to contain all of the testimony given on the trial.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded for a new trial.