JOHNSON, Administrator, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*November 22 — December 12, 1882.*

*Railroads — Negligence — Court and Jury*

1. The mere fact that a boy, between six and seven years old, was upon a railroad track at or near a street crossing, even though his father had, a short time previous, seen him going toward the track, is not enough to establish contributory negligence as a matter of law, in an action against the railroad company for the killing of the boy.
2. Upon the evidence in this case (stated in the opinion), the question of the negligence of the railroad company in not keeping a proper lookout in the direction in which the train was moving, should have been submitted to the jury.

APPEAL from the Circuit Court for *Calumet* County.

Action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant's servants. The answer alleged contributory negligence on the part of the deceased. The facts are thus stated by Mr. Justice CASSODAY:

" About 3:30 o'clock P. M. of April 2, 1878, Olof Johnson, a lad six years and nine months of age, was run over and killed by a switch-engine of the defendant, on its track at or near the bridge on the southern crossing of the same in Fort Howard. It appears from the undisputed evidence that the railroad at the point in question runs in a northerly and southerly direction, and crosses the street at the westerly end of a bridge in the same, running easterly over a slough. The bridge was twenty-five to twenty-eight feet wide. There was a switch just eighty feet northerly from the north edge of the bridge, to a side track on the westerly side of the defendant's main track, and leading from it to the Green Bay & Minnesota Railroad. Just before the injury occurred, the engine in question, with the front of it northward and the rear of it southward, hitched onto about twenty cars at

the front of the engine and started from the defendant's yard, about a mile north of this bridge, and backed the engine down, pulling the twenty cars after it for the purpose of transferring them to the Green Bay & Minnesota side track by means of the switch in question. When near the switch, the engine was uncoupled from the twenty cars and they were left upon the main track, while the engine backed down south of the switch, when that was turned, and then the engine went forward toward the north on the side track and hitched onto three box cars standing upon that track, then backed down southward onto the main track, when the switch was again turned and the three box cars were pushed northward on the main track until they came to where the twenty cars were standing, to which they were coupled, and then the engine backed and pulled the whole train southward until the rear or northern end of the twenty cars passed south of the switch, and that brought the engine about sixty feet south of the street crossing. The engine was a switch-engine, and had no tender on wheels. There was a pair of wheels in front and a foot-board for men to ride on and do their work, and another foot-board of the same kind in the rear of the engine for men to ride on and do their work while switching cars from one track to another. These foot-boards were each about one foot high from the ground, and the top of the tank six or eight feet high from the ground. Olof lived with his father, about 300 feet west of the crossing. Before any portion of the train had passed as far south as the street, Olof and his little school-fellow, Henry Bitters, had come from their school, a few blocks west of the track, and passed along the street by where his father was sawing wood, west of the track and in the block north of where he lived, and continued eastward to the railroad, and then got onto the iron step of one of the box cars in question. These little boys were driven off from the box cars by the switchman. They then passed eastward from the train down under

the bridge on the north side of it, and southerly through under the bridge to the south side of it, where they again came up onto the track and got onto the rear foot-board of the engine, either while it was standing sixty feet south of the bridge or just after it had started to push the train northward. The engineer and fireman, who were on the engine at the time, both testified, and it is undisputed, that the height of the tank was such that by looking over it from their standing-place on the engine they could not see the track until it got to a distance of thirty feet from the rear end, and that by looking out of the windows on either side the center of the track could not be seen until it got to a distance of twelve to fifteen feet from the rear end. They both testified, in effect, that they did not know that the boys were on the rear foot-board of the engine while it was standing south of the crossing, nor after it started back. The whole train being thus standing upon the track, with the northward end of the twenty cars south of the switch, and the engine about sixty feet south of the crossing, was started northward, with the two boys riding upon the rear foot-board of the engine, behind the tank. The switch being turned onto the side track, the twenty cars were pushed up northward onto that, until about a car and a half of the box cars next to the engine were on the side track north of the switch, and a car and a half or a car of the box cars and the engine on the main track south of the switch, when the whole train was stopped. Just before it came to a dead stop the little boys jumped off the rear foot-board where they were riding and went to playing in the sand between the rails of the track. The coupling-pin between the three box cars and the twenty cars was pulled before the train came to a full stop, so that as soon as the engine and three box cars came to a full stop they became separated from the twenty cars, which remained upon the side track. The bell continued to ring during all the time. The engine and three

box cars were then started southward to get south of the switch onto the main track, but had moved only about fifteen or twenty feet, or a little more, when the engineer heard an alarm from a lady and the fireman at the same time; and thereupon he stopped the engine as soon as he could do so, which he thought was within a space of about eight feet. Upon stopping the engine Olof's body was found lying dead on the track, forward of the forward drive-wheel on the left-hand side of the engine.

"The above facts are not disputed. At the close of the trial the plaintiff was nonsuited, and from the judgment entered thereon this appeal is brought."

For the appellant there was a brief by *Tracy & Bailey*, and oral argument by *Mr. Tracy*. They argued, among other things, that the defendant was liable even though the engineer did look back, if his view was so obstructed by the engine that he could not see the street which he was about to cross. *Butler v. Railway Co.*, 28 Wis., 487. A lookout is essential to absolve a railroad company from liability for negligence if the danger could have been avoided upon being seen. *C. & R. I. R. R. Co. v. Still*, 19 Ill., 499; *Frick v. Railway Co.*, 5 Mo. App., 435; *Cheney v. Railroad Co.*, 16 Hun, 415; *Townley v. Railway Co.*, 53 Wis., 626. As the failure of a traveler to look for the train is negligence on his part, so the failure of the company's servants to look for the traveler is negligence on its part. An adult traveler, who is blind or deaf, must find some substitute for the senses of sight or hearing in order to exercise ordinary care in approaching a crossing. Shearm. & Redf. on Neg., sec. 488, and note; *I. C. R. R. Co. v. Buckner*, 28 Ill., 299; *C. C. C. & I. R. R. Co. v. Terry*, 8 Ohio St., 570; *Poole v. Railroad Co.*, 8 Jones (N. C.), 340. So, if from the conformation of the ground the bell cannot be heard, the company must find some other means to give warning. And, upon the same principle, if the engineer cannot see a crossing as he approaches it, some

one should be placed where he can see, and be charged with the duty of looking. See *Thurber v. Railroad Co.*, 60 N. Y., 326; *Oldfield v. Railroad Co.*, 14 id., 310; *Mangam v. Railroad Co.*, 38 id., 455; *East Tenn. R. R. Co. v. St. John*, 5 Sneed, 524. It was for the jury to decide whether a flagman should not have been stationed at this peculiarly dangerous crossing. *Eaton v. Railway Co.*, 51 N. Y., 544; Shearm. & Redf. on Neg., sec. 483; *Linfield v. Railroad Co.*, 10 Cush., 562; *Bradley v. Railroad Co.*, 2 id., 539; *Shaw v. Railroad Co.*, 8 Gray, 45; 1 Am. & Eng. R. R. Cases, 155–157.

For the respondent there was a brief by *F. J. Lamb*, and oral argument by *Mr. Lamb* and *Wm. F. Vilas*. They cited *Railroad Co. v. Hummell*, 44 Pa. St., 375; *Railroad Co. v. Mc-Loughlin*, 47 Ill., 267; *Bulger v. Railway Co.*, 42 N. Y., 459; *Ostertag v. Railroad Co.*, 64 Mo., 421; *Boland v. Railroad Co.*, 36 id., 484; *Brown v. Railway Co.*, 58 Me., 384; *Railway Co. v. Collins*, 87 Pa. St., 405; *Railroad Co. v. Bowen*, 40 Ind., 545; *Terre Haute Railroad Co. v. Graham*, 46 id., 239; *Van Schaick v. Railroad Co.*, 43 N. Y., 527; *Allyn v. Railroad Co.*, 105 Mass., 77; *Johnson v. Railroad Co.*, 125 id., 75; *McKenna v. Railroad Co.*, 8 Daly (N. Y.), 304; *Rothe v. Railroad Co.*, 21 Wis., 256; *Lockwood v. Railway Co.*, 55 id., 50; *B. & P. Railroad Co. v. State, use of Stansbury*, 54 Md., 648; *Cauley v. Railway Co.*, 95 Pa. St., 398; *Railroad Co. v. Hetherington*, 83 Ill., 516; *Railroad Co. v. Godfrey*, 71 id., 506; *Hargreaves v. Deacon*, 25 Mich., 1; *Meeks v. Railroad Co.*, 52 Cal., 602.

CASSODAY, J. This case was here upon a former appeal from a judgment of nonsuit. 49 Wis., 529. The question of the plaintiff's contributory negligence was involved upon that appeal, as it is upon this. "It was for the jury," as there said, "to say whether the parent or this child — regard being had to his age and intelligence — used that degree of

care required under the circumstances." The question of contributory negligence upon the part of a child of such tender years as Olof was somewhat considered in *Townley v. Railway Co.*, 53 Wis., 634–637. It is there held, in effect, that such child cannot be adjudged guilty of contributory negligence, as a matter of law, unless the child is so young as to impute negligence to the parent for allowing it to be upon the track at all. Beyond question there is abundant authority for holding that it is contributory negligence for a parent to allow a child of very tender years to be about railroad trains or upon railroad tracks. *Fitzgerald v. Railway Co.*, 13 N. W. Rep. (Minn.), 168; *Cauley v. Railway Co.*, 2 Am. & Eng. R. R. Cases (Pa.), 4, and note; *Smith v. Railroad Co.*, id., 12, and note; *Mason v. Railway Co.*, 27 Kan., 84; *Michigan Central Railroad Co. v. Hassenmeyer*, 6 Am. & Eng. R. R. Cases (Mich.), 59, and note; 25 Alb. L. J., 304. Some of these cases discuss with ability the question of liability where the child is a trespasser upon the railroad track or cars. Without going into a discussion of the question, we are inclined to hold that the mere fact that Olof was seen upon the track at or near the street crossing, even when coupled with the other fact that his father saw him going towards the track, was not enough to establish contributory negligence as a matter of law, so as to authorize the court to take the case from the jury.

Does the undisputed evidence show that the defendant was free from all negligence? "It seems to be pretty well settled that a railroad company must provide for a careful lookout in the direction that the train is moving, in places where people, and especially where children, are liable to be upon the track. If they do not, and a person has been injured, then the company may, in the absence of contributory negligence, be held liable." *Townley v. Railway Co.*, 53 Wis., 634. It is claimed, however, upon the part of the railroad company, that it did keep such lookout in the direction in which

the train was moving, and that none of the defendant's servants in charge of the train knew that Olof and his comrade, or either of them, came up from under the bridge and got onto the foot-board behind the tank at the back end of the engine, nor that they remained thereon and rode up to or across the highway. They moreover claim, as the engineer and fireman testified, that after stopping, and immediately before starting to back down towards the crossing, the engineer looked out of the window upon one side of the engine, and down southerly upon the track, and the fireman looked out of the window upon the other side of the engine and, down southerly upon the track, and that neither saw these boys or any one on the crossing, or anywhere upon the track, and that had these boys, or either of them, been upon the track at the crossing, or anywhere along the track at the point in question, except between the rails within twelve to fifteen feet of the rear end of the engine behind the tank, they could and would have seen them. In support of this, they cite the testimony of the plaintiff's principal witness, Mrs. Vandenberg, who says on cross examination: "I think the engine stopped six or seven feet from where the boys jumped off. . . . *Question.* After the boys got off they seemed to get into the middle of the track? *Answer.* That is where they jumped into when they jumped off. *Question.* The engine went on from them only six or seven feet? *Answer.* I think it was about that. . . . *Question.* He was killed where he was playing? *Answer.* He was pushed along some by the engine."

If it was shown by the undisputed evidence, as claimed, that these boys got upon the foot-board of the rear end of the engine, behind the tank, and remained there, and rode up to within six or seven feet of the place where the rear end of the engine stopped, without the knowledge of any person employed upon the train, and then jumped off onto the track between the rails and remained there, so near to

the rear end of the engine that neither the engineer nor fireman, each being in his place on the engine, and just before starting back each looking out of the respective windows of the engine, could possibly see the boys, or either of them, or any one upon the track, and knew nothing of their presence until after hearing the alarm, then it would seem to be established that there was no want of ordinary care upon the part of the defendant, and that the nonsuit was properly granted. But can we say that such claim is sustained by the undisputed evidence? The undisputed evidence shows that the switch was just eighty feet north of the north side of the bridge; that the engine pushed the train up onto the side track until one and a half or two of three box cars next to the engine were on the side track; that the length of a car was from twenty-four to thirty feet; that the length of the engine was twenty to twenty-five feet; and the engineer testified that: "Next we pushed them [the twenty cars] ahead on the side track. When we pushed them ahead on the side track the engine didn't go on the side track; it went, may be, within thirty feet of the switch — the length of a rail. I think we had only three cars between the engine and the switch; may be there was one or one and a half of those cars somewhere along there." These figures would bring the foot-board upon which the boys rode somewhere from forty-four to seventy feet south of the switch; or, in other words, from ten to thirty-four feet from the north edge of the bridge, depending upon whether we take the smallest or largest numbers.

Mrs. Vandenberg, being questioned as to where the boy was when he was struck by the engine, among other things testified that: "Well, I couldn't tell exactly. I know he was near,— not quite on the crossing; very near the crossing, anyway; little nearer down the switch. He was away from the edge of the bridge, towards the north; north from the edge of the bridge. I don't think he was further down the track

than the side of the bridge. *Question.* Was he further north than the side of the street? *Answer.* No; little north; just on the side of the street. . . . He was on the north side of the cattle-guard. . . . When the engine started back, these little boys were in the street and between the track; in the track, I guess it was, right on the edge of the street. . . . *Question.* He was killed where he was playing? *Answer.* He was pushed along some by the engine. . . . He was about there, where the sidewalk is." The engineer testified: "At the time when I picked him [the body] up he was about on the crossing. I picked him out myself. I didn't take any particular notice to see how much he had been pushed along by the engine. . . . When I took the boy out he was just about in the middle of the crossing. I call the crossing where the public road crosses the railroad track. Perhaps it was about the middle of the bridge." The little boy, Henry Bitters, testified: "We had been going south away from home, riding on the engine. When we got to the crossing I got off right by the bridge; about the middle of the bridge. We sat there a minute; squatted down there. We were playing in the dirt and heard the engine coming back."

As was intimated in *Jewell v. Railway Co.*, 54 Wis., 615, but little reliance can be placed upon the mere opinions of witnesses as to duration not measured by conduct, or distance not measured by objects or measurements. This court has frequently held in jury trials that "where the plaintiff's evidence, supposing it to remain undisputed, and giving to it the most favorable construction that it will legitimately bear, including all reasonable inferences from it, would sustain a verdict in his favor, a peremptory nonsuit should not be granted." *Spensley v. Insurance Co.*, 54 Wis., 433, and cases there cited. Applying that rule to the case before us, and giving to the testimony as to the location of the boys and engine when the latter started back the most favorable con-

Johnson, Adm'r, vs. The Chicago & Northwestern R'y Co.

struction that it will legitimately bear, including all reasonable inferences from it, and supposing, for the purposes of this appeal, that such testimony was not in conflict with other evidence, and it will be seen that the jury might have inferred that the rear end of the engine was thirty-four feet north of the north edge of the bridge when it started back, and that the boys were at the time on the bridge, which would bring them from thirty-four to fifty feet from the rear end of the engine at the time it so started back. Assuming this to be true, which we must for the purposes of this appeal, however great the preponderance of the evidence may be the other way, then the boys were where the fireman and engineer both could have seen them by looking, had they done so. If they did not look before starting back, then clearly the defendant was guilty of negligence. *Johnson v. Railway Co.*, 49 Wis., 529; *Townley v. Railway Co.*, 53 Wis., 626. If they did look, and the boys were playing between the rails in the street more than thirty feet from the rear end of the engine, where we must assume they were, for the purposes of this appeal, notwithstanding the evidence to the contrary, then it would still be for the jury to say whether the defendant was guilty of negligence. *Townley v. Railway Co., supra.* Accordingly, we must hold that there was evidence to go to the jury upon the subject of the defendant's negligence.

For the reasons given the judgment of the circuit court must be reversed and the cause remanded for a new trial.

*By the Court.*— It is so ordered.