————o————

DOROTHEA OSTERTAG, Appellant, vs. THE PACIFIC RAILROAD COMPANY, Respondent.

1. *Railroads—Damages—Sitting on tressle work—Instruction as to safety of, etc.* Where a boy sitting on trestle work under one of a train of freight cars was run over and killed by the starting of the train, an instruction was held proper which declared as a matter of law that his position was an unsafe one, without leaving the question to the jury to determine, under all the circumstances.

*Appeal from St. Louis Circuit Court.*

*Leverett Bell, with Jos. T. Tatum & Wm. H. Horner,* for Appellant, cited: Norton vs. Ittner, 56 Mo. 351; Turner vs. Loler, 34 Mo. 461; Kinman vs. Cannefax, 34 Mo. 147; Meyer vs. Pac. R. R., 40 Mo. 151; First Nat. Bank of Warsaw vs. Currie, 44 Mo. 91; S. C., 45 Mo. 157; Wyatt vs. Citizen's R. R. Co., 55 Mo. 490; R. R. Co. vs. Stout, 17 Wall. 657; Conroy vs. Vulcan Iron Works, 62 Mo. 35.)

*J. N. Litton,* for Respondent, cited: Devitt vs. Pac. R. R., 50 Mo. 302; Barton vs. I. M. R. R., 52 Mo. 258; Evans vs. A. & P. R. R. Co., 62 Mo. 59; Smith vs. Union R. R., 61 Mo. 591; Owens vs. Han. & St. Joe. R. R. Co., 58 Mo. 393;

Stoneman vs. A. & P. R. R., 58 Mo. 503 ; Karle vs. K. C. & St. Jo. R. R., 55 Mo. 483 ; Norton vs. Ittner, 56 Mo. 351.

NAPTON, Judge, delivered the opinion of the court.

This was an action to recover the damages under the statute for the death of plaintiff's son, alleged to have been occasioned by the negligence of defendant's employees.

The facts, as developed on the trial, appeared to be substantially these. The son of plaintiff, about eleven years old, was, like other boys of his age, in the habit of gathering the remains of wheat found in or under the cars at the railroad depot, and about the wagons employed in hauling the wheat, and, upon the occasion of his death, took his seat upon the tressle work on which the loaded and empty cars were propelled, which was five or six feet above the ground, and upon a sudden jerk of the cars was killed, or so injured that he died the next day.

There was some difference of opinion, among the witnesses, as to whether at the time young Ostertag went under the car there was a locomotive attached to the train or not, or whether if there was he could see it. The engine had a patent bell-ringer, but this bell did not ring until a revolution of the wheel, and no bell was sounded before starting. But it seems conceded, that young Ostertag was crippled by the first revolution of the wheel. The car under which he was sitting was, perhaps, the third one in the train from Seventh Street, and the train consisted of twelve or thirteen cars, the elevation of the tressle gradually declining to the ground till it was level with it at the west end of the train, where the locomotive was attached. Whether the locomotive was attached when the boy went under the car, or subsequently, is left in doubt by the testimony, and it is not clear whether he could have seen it from his position or not. It is clear that the conductor who walked over the tops of the cars could not see a boy sitting under one of them. There was a good deal of evidence tending to establish the fact that boys were in the habit of gathering wheat left in the cars, or dropping from the wagons, and that the officers of the company prohibited it and directed their expulsion, but of course without effect.

The verdict was for the defendant, and the only ground upon which the judgment which followed it is assailed here, is, that the instructions were wrong. It is unnecessary therefore to set out the evidence in detail.

The court gave five instructions for the plaintiff and three for the defendant. These instructions were as follows :

No. 1. "The jury are instructed that although they may believe, from the evidence, that the son of plaintiffs was guilty of negligence or carelessness, which contributed to the injury, yet if they further believe, from the evidence, that the servants or agents of the defendant, managing the locomotive or cars of defendant, with which the injury was inflicted, might have avoided the said injury by the use of ordinary care and caution, the jury will find for plaintiffs."

No. 2. "The court instructs the jury that persons or corporations using dangerous machinery, or employing vehicles which are hazardous, and who know, or have good reason to know, that boys or other persons, having but limited capacity or discretion, are in close proximity to or near by said machinery or vehicles, the persons or corporations using them are bound to exercise a degree of caution and skill which would not otherwise be required; and if the jury believe, from the evidence, that the agents or employees of defendant, in charge of the locomotive or cars of defendant, knew, or had reason to know, that the son of plaintiffs was about or near to the same, the jury may consider this fact in determining the question of defendant's negligence."

No. 3. "The court instructs the jury that defendant is required to exercise the utmost care and greatest prudence in the operation of its engines and machinery, on account of the danger attending the use of the same; and if the jury believe from the evidence in this action, that the defendant's agents or servants whilst managing the locomotive or cars of defendant, as such agents or servants, failed to use such care and prudence, by which the injury was done to the son of plaintiffs, they should find for plaintiffs in this action."

No. 4. "The court instructs the jury that if they find for the plaintiffs they must assess their damages at the sum of five thou-

sand dollars, that being the amount to which plaintiffs are entitled by law, if the jury find a verdict for plaintiffs."

No. 5. "The jury are instructed that the son of plaintiffs was bound to exercise only such care and prudence as might reasonably be expected of a boy of his age and capacity under similar circumstances, and that the same degree of care and prudence in avoiding danger is not required from a person of tender years and imperfect discretion as from a person of mature years and greater discretion under similar circumstances; and if the jury believe, from the evidence, that the said son of plaintiffs was, at the time of the accident, of about the age of eleven years, they may take that fact into consideration in considering the question of negligence or carelessness on the part of said son."

Defendant's instructions given were : No. 1. "Even if the jury believe that the grounds ought to have been inclosed by gates, or other methods ought to have been adopted to exclude persons by force from the grounds, yet if they find that there was no negligence on the part of those managing the train, they must find for defendant."

No. 2. "Although the same degree of care is not required on the part of a child as is required of a grown person, yet, if the jury believe that the boy Ostertag either knew, or was of an age to know, that it was dangerous and unsafe to sit under the defendant's cars, he was required to avoid such dangerous and unsafe place, and if he failed to do so he was guilty of negligence."

No. 3. "The court instructs the jury that if the boy Ostertag was guilty of negligence directly and proximately contributing to his injury, the plaintiffs cannot recover."

The principal point relied on for reversing the judgment is, that in the second instruction given for the defendant the court assumed that to sit under the defendant's cars was a dangerous and unsafe place ; that it ought to have been left to the jury to determine whether such act, on the part of the boy who was killed, was negligence or recklessness or not. The instruction was, that a child was not expected or required to exercise the same care as a grown person, and left it to the jury to determine whether young Ostertag knew, or had reason to know, that it was dan-

gerous or unsafe to sit under the cars, and directed them, if they thought he knew, or was of an age to know, that such position was an unsafe one, that he was guilty of negligence. The objection is, that the instruction assumed as a matter of law that sitting on the tressle work under a car was an unsafe place.

The court had previously told the jury that no amount of negligence on the part of the boy would authorize the defendant's servants to kill him, if they were aware of his position, and the real question in the case was, whether due care was observed by the defendant. There are some things that a court may assume as negligence, such as a man's jumping from a car propelled by steam when in rapid motion, and taking a seat under a car at a station is certainly not a safe position. The cases of Wyatt vs. Citizen's R. R. Co., (55 Mo. 489) and R. R. Co. vs. Stout, (17 Wall. 657) presented very different questions. In Wyatt's case the plaintiff jumped from a street car, propelled by horses, at the repeated solicitations and orders of the conductor, and in Stout's case the questions are entirely as to the proper care of the railroad company in regard to inclosing the turn table. In this case the court leave it to the jury to find whether young Ostertag was of an age to understand that his position was an unsafe one, or not. No one could doubt that it was hazardous. The facts in the case showed this, and it would have been useless to leave such a question to a jury. That it was so, all the evidence on both sides established. The death of the boy showed this, and the question of fact upon which the responsibility of the company depended was, whether the unfortunate occurrence could have been avoided by due care on their part.

The instructions, taken altogether, appear to us as a very fair presentation of the questions for the determination of the jury, and indeed we do not very well see how the jury could have found otherwise than they did. The accident was evidently the result of a singular degree of carelessness on the part of the boy, without, so far as the evidence shows, the least fault of the defendant's servants. That the boy was not observed by any of the superintendents or managers of the train is clear, and that the usual precautions of having a brakeman walk over the cars

from one end of the train to the other was observed in this case, is proved by the testimony of the brakeman; but of course he could not see a person sitting under one of the cars, although a number of boys were in the habit of gathering wheat from the cars and wagons at this station, daily, and this fact was well known to the employees of defendant. It does not follow that the toleration of such depredations devolved additional duties on defendant's agents in moving their train. It seems likely that young Ostertag, who was sitting on the tressle with his face to the north, did not observe the locomotive at the west end of the long train—the track west inclining to the south. But there was nothing in the known habits of the boys who gathered wheat, to lead the conductors or managers of the freight train to examine underneath the cars, and the ringing of the bell was not with any view to apprise strangers, but, I suppose, altogether for the convenience of the employees of the company.

The death of young Ostertag was simply an unfortunate accident, for which the company was not responsible.

Judgment affirmed; the other judges concur.