JAMES SMITH, *by his next Friend*, WILLIAM SMITH, V. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD CO.

1. CHILD, *Straying upon Railroad Track; Personal-Injury.* Where a child two years old strays away from his home, without the knowledge or consent of his parents, and goes upon a railroad track, which is about one hundred feet from his home, and within three minutes after leaving his home is injured by a car, belonging to the railroad company, running over him, *held,* that it cannot be said, as a matter of law, that the failure of the parents to keep the child away from the railroad track was *per se* culpable negligence contributing to the injury.

2. NEGLIGENCE, *When a Question for Jury.* Where a railroad track is constructed in a populous neighborhood, near a city, and children and others often go upon the track, and a portion of the track has a steep grade down which cars will run with great force when the brakes are loosened, and the persons operating the road loosen the brakes of a car loaded

with coal, and let it run down this steep grade, without any person being on the car, or without any means of stopping it, and without first looking to see whether the track was clear or whether any person was on the track or not, and a child who was on the track was run over and injured, and there is a conflict in the evidence as to whether the child could have been seen by the persons operating the road before they loosened the brakes, *held*, that the courts cannot say, as a matter of law, that the persons operating the road were not guilty of negligence; but it is a question of fact, which should be submitted to the jury.

3. SWITCH TRACK; *Injury to Child Thereon.* Where a railroad company owns a switch track constructed from the main track to a coal shaft belonging to a mining company, and the railroad company furnishes cars to this mining company to be loaded with coal, and when loaded permits the mining company to loosen the brakes of the cars so that the cars will run down the steep grade of the switch track to a point where the track is level, and the mining company, after loading a certain car, negligently loosens the brakes thereof and allows the car to run down the steep grade of the switch track and over a child and thereby injures it, *held*, that the railroad company is responsible for the injury.

### *Error from Osage District Court.*

ACTION for damages for personal injuries, brought by *James Smith*, an infant, by his next friend, William Smith, against the *Railroad Company*. Trial at the April Term, 1879, of the district court, and judgment for the defendant. The plaintiff brings the case here. The facts appear in the opinion.

*C. S. Martin*, and *Ellis Lewis*, for plaintiff in error.

*Ross Burns, A. A. Hurd*, and *W. C. Campbell*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for damages, brought by James Smith, an infant two years and twenty days old, by his next friend, William Smith, against the Atchison, Topeka & Santa Fé railroad company. The action was tried before the court and a jury; and after the plaintiff had introduced his evidence and rested, the defendant demurred to the evidence, upon the ground that it did not prove any cause of

action in favor of the plaintiff and against the defendant. The court below sustained the demurrer, and rendered judgment in favor of the defendant and against the plaintiff, who brings the case to this court.

The plaintiff claims that the evidence introduced in the court below shows that the facts in this case are substantially as follows: On September 26, 1878, the plaintiff was badly hurt, being crippled for life, by being run over by a flat car on a side switch of the Atchison, Topeka & Santa Fé railroad, near Osage City, Kansas; he was only two years and twenty days old. The defendant was the owner of, and operated the switch, using it daily. The switch was 300 feet long, and built with a heavy grade, down which cars would run with great force when the brakes were loosened. The employés of the Carbon coal and mining company used this switch almost constantly in loading coal. At the time the plaintiff was hurt, and just prior to the actual injury, the employés of the Carbon coal and mining company loaded a flat car at its coal shaft and chute; on this side track, and took off the brake, and the car ran down the grade, no one being on it, and it ran over the plaintiff. He lived with his parents, about one hundred feet from the switch, and had not been gone from the house more than three minutes when he was hurt. The switch was in a populous neighborhood, beyond the limits of the city, and the track not fenced. The Carbon coal and mining company had been using the switch for near two years. It had always allowed the cars to run down the grade, when loaded, without the brake being set on any of them. The track was clear from the shaft to the place where the grade changed, and where the cars would stop of their own accord. The employés of the company had at different times driven children off the track. At the time when the car which ran over the plaintiff was started, one Chris. Black started it, and did not look to see whether any one was in the way or not, although he could have seen any one on the track if he had looked. Black was an employé

of the Carbon coal and mining company.   The railroad company used the switch daily, sending in and taking out cars.

The defendant would seem to admit the foregoing facts, except as follows:

Defendant claims that a flat car stood on the switch track, immediately in front of the plaintiff's home, and that the plaintiff, when he strayed away from his home, went under this flat car, and that when Black loosened the car at the coal shaft so that it ran down the grade of the switch track, it struck the car under which the plaintiff was situated, and set it in motion, and that it was this last-mentioned car which ran over the plaintiff and injured him.   The defendant further claims that at the time of the injury none of the employés of the defendant or of the Carbon coal and mining company could from his position have seen that the plaintiff was on the track or in any danger, even if he had looked.

The following are also facts, as shown by the evidence:

1st.  No one knew that the plaintiff was on the track of the railroad company at the time he was injured.

2d.  The track and the land over which it was constructed belonged to the railroad company, and therefore the plaintiff at the time he was on the track was technically a trespasser.

3d.  There was no fence or anything else between plaintiff's home and the railroad track to prevent the plaintiff from going upon the track, which was about one hundred feet from the plaintiff's home.

4th.  Plaintiff was not injured by any direct or immediate act of any servant or employé of the railroad company, but was injured through the acts of the employés of the Carbon coal and mining company.

5th.  And it is clear that the employés of the Carbon coal and mining company did not look before they loosened the car that caused the injury, to see that the track was clear so that it would not injure any person, but whether they could have seen the plaintiff or not, if they had looked, is disputed; but as there was some evidence introduced tending to show that they might have seen the plaintiff if they had looked,

and as the court below sustained the demurrer to the evidence and refused to permit the evidence to be considered by the jury, we must take it as a fact in the case that the employés of the Carbon coal and mining company could have seen the plaintiff on the track if they had looked along the track before they unloosened the car.

These we think are substantially all the facts in the case; and upon these facts, is the railroad company liable? The defendant claims that it is not liable: First, because the injury to the plaintiff was not produced by any negligence of either the defendant or of the Carbon coal and mining company; second, because, even if the Carbon coal and mining company was negligent, still, that the defendant is not liable therefor; and third, because, even if the plaintiff was injured through the negligence of either the defendant or of the Carbon coal and mining company, still, that he cannot recover, on account of the contributory negligence of his parents and custodians.

The defendant seems to admit that the plaintiff himself was too young to be charged with contributory negligence; and the question whether the parents and custodians of the plaintiff were guilty of contributory negligence may also be eliminated from the case; for, as before stated, the question was not submitted to the jury, but was decided by the court, and therefore, unless we can say *as a matter of law*, that they were guilty of negligence, we cannot say that the court below decided the case correctly as to this question; that is, unless we can say that the failure on the part of the parents of the plaintiff to keep him away from the railroad track was *per se* culpable negligence, contributing to the injury, we cannot say that the court below committed no error in taking the case from the jury, because of any supposed negligence of the parents of the plaintiff in permitting him unconsciously to enter upon the railroad track. We cannot say that the parents were thus guilty of negligence. Indeed, if we were examining the case as a juror must examine it, and as a question of fact instead of as a question of law, as we are now consider-

ing it, we do not think that we could say that the parents of the plaintiff were guilty of culpable negligence. The parents were in moderate circumstances. The father was a miner, and was working, at the time of the injury, in a coal shaft at the place where the car that did the injury was loaded; and the mother was at home attending to her household affairs; and the boy left the house without her knowledge only about three minutes before he was injured. Ordinarily the parents were very careful to keep their children away from the railroad track, and it was without their permission and against their will that their children at any time went upon the track. This would seem to be sufficient to exempt them from the charge of negligence, even if the question were to be viewed as a question of fact, and as a jury should consider it, and not as a question of law, where we are asked to decide affirmatively that the parents' acts were legal negligence. The court below certainly erred, if it decided this question in favor of the defendant.

This leaves two questions still to be considered: First, were the employés of the Carbon coal and mining company negligent? And second, is the railroad company liable for its negligence?

We think, as the question is presented to us, we must hold that the employés of the Carbon coal and mining company were negligent. As the case is presented to us, we must consider everything as proved which the evidence of the plaintiff tended to prove. We must not only consider that the employés of the Carbon coal and mining company did not look to see that the track was clear before they loosened the car that did the injury, but also that they could have seen the plaintiff on the track if they had looked; and the fact of not looking, under such circumstances — or, in other words, the failure to look — we must hold was negligence. It must be presumed conclusively that the Carbon coal and mining company, as well as the railroad company, was acquainted with the vicinity where the injury occurred, and with all its surroundings. It must be conclusively presumed that both com-

panies were acquainted with the character of the railroad track,
its down grade, that it was situated near a city, in a populous
neighborhood, and that children were occasionally found upon
the track; and under such circumstances, we think it was neg-
ligence for the employés of the Carbon coal and mining com-
pany not to look before they set the car in motion which did
the injury. All persons are required to do business with
reference to all the known surroundings; and while we do not
think that either the railroad company or the Carbon coal and
mining company was required to have a watchman to keep
the track clear or to warn persons of danger, yet we would
think that the general obligation, which we are all under, to
avoid injury to others wherever we reasonably can, would
require the company, when about to move a car, to exercise
at least that slight degree of precaution which consists merely
in looking ahead to see that the track is clear before setting
in motion a loaded car and allowing it to run with great force
down a steep grade, without any means of stopping it until
it reaches the bottom of the grade. To allow cars to be run
in such a manner, under circumstances similar to those sur-
rounding the present case, would often result in injury to
individuals; and to run cars in such a manner under such
circumstances shows a wanton disregard for the safety of
others. In support of these views, we refer to the following
authorities: *Frick v. The St. Louis &c. Rld. Co.*, 5 Mo. App.
435; *Johnson v. Chicago &c. Rld. Co.*, 49 Wis. 529; same
case in 1 American & English Railroad Cases, 155, 157, 158,
and cases there cited; *Cheney v. N. Y. C. &c. Rld. Co.*, 16 Hun,
415.

If the facts of this case were as they are claimed to be by
the defendant, then the following authorities would probably
apply, and the defendant would probably not be liable: *Os-
tertag v. The Pacific Rld. Co.*, 64 Mo. 421; *P. & R. Rld. Co.
v. Hummell*, 44 Pa. St. 375.

The next question is, whether the railroad company is
responsible under the circumstances of this case for the neg-
ligence of the employés of the Carbon coal and mining com-

pany? We think it unquestionably is. (*K. P. Rly. Co. v. Wood*, 24 Kas. 619; *K. C. Rly. Co. v. Fitzsimmons*, 22 Kas. 686; *Railroad Company v. Brown*, 84 U. S. 445; *Taylor v. W. P. Rld. Co.*, 45 Cal. 323; *Bower v. B. & S. Rld. Co.*, 42 Iowa, 546; *Chicago &c. Rly. Co. v. McCarthy*, 20 Ill. 385; *Lowell v. B. & L. Rld. Co.*, 40 Mass. 24.) The railroad company owned the entire railroad property and had the entire possession and control thereof, and simply permitted the Carbon coal and mining company to load coal into the cars of the railroad company, and to allow the cars to run down on the steep grade of the railroad switch to the level portion thereof. The Carbon coal and mining company had no control of the switch or of the cars, except as permitted by the railroad company, and had no control of any of the engines of the railroad company. The railroad company with its own engines moved the cars to the place where the Carbon coal and mining company desired to load them, and the Carbon coal and mining company had nothing to do but load them and let them loose as aforesaid; therefore whatever was done in the way of moving the cars by the Carbon coal and mining company, or by its agents and employés, was in fact done by the railroad company itself; and whatever negligence intervened in such removal, was the negligence of the railroad company. Besides, it is a general principle of law that a railroad company cannot escape the performance of any duty or any obligation imposed upon it by its charter or by the general laws of the state by voluntarily surrendering its road or the control thereof into the hands of others; and whether it operates its road itself, or whether it permits others to do it, it is generally liable for all injuries resulting from the negligent management or negligent operation of the road. It is a duty resting upon all railroad companies to see that their roads are properly managed and properly operated; and where they are not so managed and so operated, the companies must be held responsible therefor.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.