## RIDENHOUR V. THE KANSAS CITY CABLE RAILWAY COMPANY, *Appellant.*

1. **Railroad:** YOUNG PASSENGER: STOPPING CAR. The fact that a passenger is evidently crippled, infirm or young is a circumstance which must be regarded by a carrier in the performance of its duty, to stop a car a sufficient length of. time to give the passenger a reasonable opportunity to alight in safety.

2. **Negligence:** VARIANCE. Where the actual negligence charged against a carrier was its permitting the car on which the plaintiff was a passenger, "to be put in motion while the plaintiff was in the act of leaving the car, without giving him a reasonable time to alight safely therefrom, whereby he was thrown from the car," and the proof was that it slackened up so as to induce plaintiff to get into a position to alight, and then started off with such violence as to throw him off, *held* no variance.

3. **Variance, How Taken Advantage of.** A variance will not afford a ground for reversal, unless advantage be taken of it by affidavit, that the appellant was misled to his prejudice, as provided by Revised Statutes, 1889, section 2096.

4. **Practice:** INSTRUCTIONS. Instructions should be taken together, and, when so considered, if they declare the law sufficiently favorable for the appellant he cannot complain.

5. **Negligence of Child:** DUTY TO AVOID DANGER. A child, to the extent that it has knowledge and understanding of a danger, or where it is of such a nature as to be obvious even to one of his years, is under a legal duty to avoid it.

6. ———: ———. The court cannot, as a matter of law, declare that a child nine years of age is incapable of negligence.

7. ———: ———. The standard of care required of a child is such reasonable care and diligence as characterize the average one of its age.

8. **Witness:** CHILD: STATUTE. Under Revised Statutes, 1889, section 8925, declaring as incompetent to testify "a child under ten years of age who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly," a child under ten is presumptively incompetent, but such issue of competency is one for the trial court, whose rulings thereon will not be reversed, unless it affirmatively appears there has been an abuse of discretion.

9. ——: ——: ——. The fact, that the court permits a witness to testify after objection made on account of his youth, is equivalent to a ruling that it is satisfied of the competency of the witness.

10. **Excessive Damages:** MOTION FOR NEW TRIAL. An objection to a verdict because of excessive damages will not be considered in the supreme court, unless the objection was raised in the motion for a new trial.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) The demurrer ought to have been sustained. There was no evidence to sustain the issues presented by the pleadings. *Mays v. Pryce*, 95 Mo. 613; *Ischer v. Bridge Co.*, 95 Mo. 261; *Harty v. Railroad*, 95 Mo. 368; *Gurley v. Railroad*, 93 Mo. 450; *Schlereth v. Railroad*, 96 Mo. 509; *Clotsworthy v. Railroad*, 80 Mo. 220; *Nelson v. Railroad*, 68 Mo. 595; *Current v. Railroad*, 86 Mo. 66. (2) Plaintiff's first instruction ought not to have been given. *First.* An instruction is improper which submits an issue to the jury when there is no evidence to support it. *Harty v. Railroad*, 95 Mo. 368; *Bowen v. Railroad*, 75 Mo. 458. *Second.* The instruction is calculated to mistake or confuse the jury, and should not have been given. *Donohue v. Railroad*, 83 Mo. 560. *Third.* It ignores a material issue presented by the pleadings. *Budd v. Hoffheimer*, 52 Mo. 297; *Bank v. Armstrong*, 62 Mo. 59; *Jackson v. Boyles*, 67 Mo. 609; *Crews v. Lackland*, 67 Mo. 619; *Greer v. Parker*, 85 Mo. 107; *Glass v. Gelvin*, 80 Mo. 302. *Fourth.* It ignores the question of contributory negligence. *Gilson v. Railroad*, 76 Mo. 286. *Fifth.* It inconsistently assumes a state of facts that would preclude a recovery, and concludes that such facts will

authorize a recovery. ( 3 ) Second instruction is in conflict with the decision of this court in *Erwin v. Railroad*, 9 S. W. Rep. 579 ; *McCarty v. Railroad*, 92 Mo. 541 ; *Ostertag v. Railroad*, 64 Mo. 424; *Railroad v. Declaney*, 82 Ill. 198 ; *Plumley v. Birge*, 124 Mass. 57 ; Shearman & Redfield on Neg. [ 4 Ed.] p. 108, sec. 73 ; *Dowd v. Chicopee*, 116 Mass. 96. ( 4 ) Defendant's first instruction ought to have been given. *Schlereth v. Railroad*, 96 Mo. 509.

*J. F. Waters* and *Crittenden, McDougal & Stiles* for respondent.

( 1 ) The plaintiff was a competent witness. The trial court upon seeing, hearing and observing the witness found that he was capable "of receiving just impressions of the facts respecting which he was examined" and "of relating them truly," and thereupon admitted his testimony. This does not fully appear in appellant's abstract ; but upon such an examination by the trial judge this plaintiff was held to be a competent witness, and that finding "is not subject to review in this court." *State v. Jefferson*, 77 Mo. 136, 138; *State v. Scanlan*, 58 Mo. 204. ( 2 ) The petition stated a cause of action. The negligence charged was that defendant suddenly started its train while plaintiff was in the act of leaving the car. The train did not come to a full stop ; it came almost to a standstill, and then suddenly started with a violent jerk which threw plaintiff off. There was therefore no substantial variance between the allegation and proof. *Werner v. Railroad*, 81 Mo. 368 ; *Leslie v. Railroad*, 88 Mo. 50 ; *Litchfield Coal Co. v. Taylor*, 81 Ill. 590. " Besides this, it is provided by section 3565, Revised Statutes, that no variance shall be deemed to be material unless it has actually misled the adverse party to his prejudice, and that it can only be taken advantage of by affidavit, showing in what respect the party has been misled. No such affidavit was filed in this case." *Olmstead v. Smith*, 87

Mo. 602, 607. "No such showing was made, and it is too late to complain here." *Bank v. Wills*, 79 Mo. 275, 276, and cas. cit. (3) The court below committed no error in either giving or refusing instructions.

SHERWOOD, J.—Action by plaintiff, through his next friend, to recover $25,000 for personal injuries received by him on the seventeenth day of April, 1886, in alighting from a train of defendant's cars near Holmes street, in Kansas City, Missouri. The claim of the plaintiff was that he was permanently injured by the cars running over his left arm, bruising and lacerating the same. The verdict of the jury was for the sum of $8,500. The answer of the defendant was a general denial, as well as a plea of contributory negligence. There was testimony to sustain the theory of the plaintiff's case, and testimony of a contrary effect. At the time of the accident the plaintiff was between nine and ten years of age.

The petition, omitting formal parts, is as follows: "That on arriving at Eighth and Holmes street, aforesaid, defendant, at the request of plaintiff, stopped the cars for the purpose of permitting plaintiff to alight therefrom, but that defendant, wholly neglecting and disregarding its duty in that behalf, in not using proper care and caution in managing and operating its said cars, carelessly, recklessly, negligently and wantonly permitted said car, upon which plaintiff was at said time a passenger, to be put in motion while plaintiff was in the act of leaving the car, and without giving him a reasonable time to alight safely therefrom, whereby plaintiff was thrown under the car, the wheels of which passed over plaintiff's left arm, tearing, lacerating, fracturing and mangling same, and plaintiff was otherwise bruised, wounded and injured; and also, by means of the premises, plaintiff became and was sick, sore, lame and disordered, and so continued for a long space of time, during which said time plaintiff suffered and

underwent great bodily pain and mental anguish; that said injuries resulted to plaintiff wholly on account of the negligent, careless, reckless and wanton conduct of defendant in suddenly starting its said car while plaintiff was in the act of getting off same, as aforesaid, and that, by reason of said injuries, plaintiff has been prevented from performing manual labor as heretofore, and is by said injuries otherwise greatly injured, and his health permanently impaired, and is rendered a cripple during his natural life, and unfit for the performance of manual labor during the same. Wherefore, plaintiff prays judgment for $25,000 (twenty-five thousand dollars), with costs.''

The answer is a general denial, and a plea of contributory negligence; and the reply, a general denial of the new matter in the answer.

As there is no dispute as to the correctness of defendant's abstract as to the evidence adduced, that evidence will be accepted and inserted here (except that portion which relates to the plaintiff's competency, which will be sufficiently noticed in the opinion). That evidence is the following:

The plaintiff, Albert Ridenhour, testified: "I will be ten years old next January. Live on Charlotte street. I had been at work for a man by name of Mr. Henry for about a week. He kept a fruit stand at the corner of Sixth and Delaware. My folks lived on Charlotte street, where they are living now. They moved there on the Saturday evening before I was hurt. I had been at work that day for the gentleman by whom I was employed. About five o'clock, I started home. I went to the junction at Ninth street, and got on the cars. They were going towards Woodland avenue. I went in the gripcar, and remained there during the whole ride. I saw the conductor, and held up my hand, and told him I wanted to get off, just before I got to Holmes street. He rang the bell for the car to stop, and I started to get off; and he started up before I got off,

just as I had one foot off the step, and hand hold of the handle of the car. The car did not come to a full stop. It started with a jerk, and throwed me off; and my left arm went under the wheel, and it ran over my arm. The conductor was on the platform. I had on a fur cap. This is the one (showing witness a fur cap). Yes, sir; I was barefooted, and had on that cap. (Witness takes off his coat, and makes a profert of his arm.) I cannot stretch out my fingers. I was taken to Mr. Newman's store, at the corner of Eighth and Holmes. I had been there before, and know the way home from this point. My arm and my back pained me severely. Dr. Rieger, the company's surgeon, attended on me. I suffered pain for four weeks."

"Q. State to the jury whether or not you have suffered since,—whether or not you suffer now at any time?" (Objected to by defendant's counsel. Objection overruled by the court. The defendant, then and there, by its counsel, duly excepted.) "My arm hurts yet, right there on the bone. I am awakened at night with pain."

On cross-examination, witness testified: "I had been working for Mr. Henry about a week. It was after eight o'clock in the evening that I left his place, on the day of the accident. I had never worked for him before. Ma had washed for him. I never worked for anybody before. It is half a block from Eighth to Charlotte. It is the first house. I went into the passenger-car, and found that full, and then went into the gripcar, and took a seat right close to the gripman. The conductor came around when the car was near Holmes street. It was near Holmes street that I told him I wanted to get off at Holmes. I had been up to that store that morning, and knew the way from there home. I was afraid I could not find my way from Charlotte street. I can see the cable cars from our house, and our house from the cable cars. I had been to Eighth and Charlotte before, and knew the streets around there. Had never

been at the grocery store before.   When I told the con-
ductor I wanted to get off at Holmes street, he was out
on the platform of the other car.   I did not call out to
him.   I just held up my hand, and he seen me.   I told
him I wanted to get off.   He rang the bell.   The car did
not stop right still.   It just slacked up.   I went out to
the door to get off ; and, just as I had one foot off, they
gave a jerk, and started right up.   I attempted to get
off the platform of the other car, on the south side.   I
had hold of the railing with the right hand.   The cars
gave a sudden jerk, and I fell off, and was run over by
the two hind wheels of the car.   I got up, and went
over on the south side, and laid down on a little mound.
A colored boy came along, and took me to Mr. Newman's
store ; and Mr. Newman took me, and wrapped my arm
up.   I did not see any other person I knew except Mr.
Newman and the colored boy.   A man living on Dela-
ware street helped to wrap up my arm.   He was a tall
man.   Dr. Rieger was the only surgeon that waited on
me.   I was out of the house about four weeks after the
accident.   I do not know what an oath is.   I do not
know what swearing is.   I do not know what swearing
in court is."

Henry Eft testified :   "I am in the fruit business
on the south side of Sixth street, right on the corner of
West Sixth.   I had the plaintiff employed about one
week.   I paid him fifty cents a day, and his board.
He was perfectly honest, and polite to the people.   Saw
him the day of the accident, when I closed up my stand.
I wanted him to go home with me.   It was between
seven and eight.   I gave him a dime.   After closing
up, I went with him to Ninth street and Main.   He had
the dime in his hand when he got on the car.   I did not
hear anything more about it until the next morning."

Mary Jones testified :   "I live on Thirteenth and
Charlotte.   The first time I saw plaintiff was on the
car, on Sunday evening.   He got on at Ninth and
Main.   He had a fur cap on and was barefooted.   I was

out for a Sunday evening ride. I got on at Charlotte and Eighth. Rode to West Kansas, and on my way back, near Walnut and Eighth, I first saw the boy. I was sitting on the south side of the gripcar, near the gripman. I was in the front end of the car. The boy was right in front of me, on the north side of the car, in the corner. The gripman or conductor came in, and said something to the boy, and he got up, and went out. This was near Holmes street. The car kind of jerked up. It did not stop before it started again. The car stopped. It looked like it had run over something. The conductor and gripman left the car. I do not know whether they got off or not. They came in a second, and said there was a little rock on the track. I cannot say whether this was at Holmes or Charlotte street. I guess it was at the corner of one of the streets. I never heard any bell ring for the train to stop."

J. W. Jackson testified: "I have been a practicing physician and surgeon for about twenty-eight years, and am in the employ of the Wabash railroad company. I have examined the arm of the boy. I do not think he will ever have perfect use of it. I regard the injury as permanent. The injury has severed the nervous connection, and resulted in paralysis of the extension muscles. The muscles that extend the fingers are paralyzed. It contracts the fingers down. I made the examination in June. The working of the elbow joint is not impaired. He has but little power of pressure in the two larger fingers. He has the use of his arm in the elbow joints."

Fielding Hyson testified: "I have been working for Mr. Biddle since the tenth of May, attending to his horses, and doing general housework. I first saw the plaintiff between Main and Walnut streets. I was on the cars with Miss Jones. We were on our way back to Charlotte street. Miss Jones said: 'Look at that little boy in here with a fur cap, and barefooted.' He sat down in the northeast corner of the gripcar. The northwest corner of the gripcar he came in and sat

down. He remained there until we got very near to Charlotte street. We noticed the boy get up. He spoke to the conductor, and he and the conductor went out of the door. The car hardly checked up from going fast. It did not come to a stop, and then it started up again; and then we stopped all at once, and the conductor and gripman ran out. I went to the door, and they jumped aboard, and started on. The car did not stop. It slackened up, and then started up again really fast, and then stopped again all at once. The car went twenty or thirty yards before it stopped. I am positive the car did not stop at the time the boy went out to get off. The boy was in the northwest corner of the car. I am certain of this. I was in the southeast corner. I do not know whether the conductor rang the bell or not. there were three colored persons in the car. That was all. The accident occurred between eight and nine o'clock."

Josh Emmons testified : "I was on corner of Eighth and Holmes streets. I saw the cars; they slacked up, then they gave a sudden jerk and moved off. I saw a little boy get up and go to the corner of Mr. Ryan's house, and he laid down on a little bank where they had blue grass. I picked up his cap and took it to him. I asked him how he got hurt. He said he wanted to get off, and the car kind of slacked up, and gave a sudden jerk, and jerked him off, and he threw his hand out, and then the conductor did not stop for him. I took him to Mr. Newman's store. He was groaning and bleeding. Mr. Newman wrapped his arm up."

Joseph Newman: "I live on northeast corner of Eighth and Holmes; the boy was brought into my store. He told me he got hurt by getting off the cable car; that the gripman did not slack enough for him to get off; that he told the conductor to let him off; that the car slacked but did not stop; that he was in the act of stepping off of the car and it gave a jerk, a sudden jerk;

he suffered a good deal ; I heard him groan and I gave him water."

Sarah Jane Allen: "I am mother of the boy ; he suffered about four weeks ; it seemed like his back and side hurt him a good deal ; he was confined to the house about four weeks ; his back and side and arms still hurt him."

William H. Lucas : "The Kansas City Cable Railway Company was operating the road at the time of the accident, the defendant in the present action."

This was all the evidence offered for plaintiff, after which defendant's counsel demurred to the plaintiff's case, which was as follows :

"Although the jury may believe all the evidence introduced by plaintiff they will find the issues for defendant," which instruction the court refused, to which refusal of the instruction thus asked, the defendant by its counsel then and there excepted at the time.

The defendant offered the following testimony :

J. H. Rieger : "I am surgeon of the cable road. On April 18, between half past eight and nine o'clock I was notified that a boy was hurt. I went to see him ; I found him at his home between Seventh and Eighth on Charlotte street ; I examined his injuries which were on his left arm above and below the elbow ; above the elbow the spot appeared somewhat torn and bruised, and below the elbow there was a long wound and the wound and the muscles were likewise torn and bruised, as well as the skin. I attended the boy until he recovered, at the instance of the company ; furnished all the attendance there was, and neither the boy or his parents were charged for it. The injury appearing below the elbow, the ulna nerve was torn into and the nerve of this little finger, and the finger containing the ring ; these two fingers are contracted in that shape. It will probably be permanent, but there is some question being raised in the surgical world, in regard to where a

nerve is cut, whether nerves that supply other parts adjacent do not furnish some nervous force, and give some movement; the flexor and extensor muscles are somewhat injured. He made four different statements as to how he was hurt. *First.* He told me he was on the steps of the car, and a sudden jerk of the car threw him off; he then told me that, in stepping in between the two cars, he fell in between the cars, and the cars went over him. This second conversation was that night or about two o'clock the next day; after that he stated that he was unacquainted with that part of the town; that his landmark was the store on Holmes street; that he was on the step waiting until he came to that place when a sudden jerk of the car threw him off; the next statement was that he told the conductor to stop; before he could get off, the jerking of the car threw him off. The nature of his injuries lead me to believe the *second* one was correct. He told me he was standing on the steps of the coach, that is, the passenger car; he was rational when he told me about the accident."

R. J. Ritterhouse: "I was conductor on the train on which it was claimed a boy was hurt, and first learned the fact as I returned from the eastern terminus of the road. Mr. Rodgers got on my train and asked me how it happened that I hurt a boy at Holmes street. I told him that was the first I had heard of the accident; that there was not any boy on my train that had wanted to get off at Holmes street; there was no boy on my train as I went east. I saw several boys around the corner of Holmes street, but could not recognize them it being about dusk; I stopped at Charlotte street. There were several colored people that wanted to get off at Charlotte street; did not stop at Holmes or between Holmes and Charlotte. The travel was light at that time in the evening, and if anyone had told me they wanted to get off at Holmes street I would have recollected it. I am still in the employ of the defendant."

A. Rodgers, Assistant Superintendent Kansas City Cable Company: "On seventeenth of last April I was going out on the line; I was on the train behind the one it was claimed the boy was hurt on. At Holmes street the wife of the gentleman that keeps the grocery store came out and hallooed that we had run over a little boy. I asked her what train; she said that train up there, that was about between Harrison and Troost; they were taking him into the store. Dr. Wood came and bound up his arm; we took him home. Dr. Rieger came and dressed the wound. I asked the boy how he got hurt; he said he was standing on the front platform, on the step, holding onto the railing next to the car, what we call the dashboard, and he said a jerk of the car knocked him off and he fell. Then he told me afterwards that he was standing on the step and he fell off. I made inquiry of everyone about there, if anybody had seen it, and there was nobody had seen him when he was hurt but that colored boy."

Whereupon the plaintiff prayed the court to instruct the jury as follows:

"1. If the jury find from the evidence that plaintiff was a passenger on defendant's cars, that the agents and servants of defendant in charge of said car knew at what point plaintiff desired to alight and that, when they reached said point, said agents and servants of defendant did not stop a sufficient length of time to permit the plaintiff, acting with reasonable care and diligence for one of his years, to alight in safety from said cars, and that by reason thereof the plaintiff in attempting to alight was thrown from said car and injured, then he is entitled to recover.

"2. Negligence cannot be imputed to one who has not sufficient capacity or discretion to understand danger, and use proper means to guard against it, and the mere fact that plaintiff was on the steps, if he was there, when there was room inside, does not absolve defendant from liability, and whether the steps were a more

dangerous place than inside the car, and if so whether plaintiff had at the time sufficient capacity and discretion to understand that it was the more dangerous, are questions that the jury must determine under all the facts and circumstances in proof.

"3. If the jury find for plaintiff they will assess his damages at such sum as in their judgment he may be entitled to, under the facts proven and instructions given, not exceeding, however, $25,000, and in fixing the amount of such damages they will take into consideration his age and condition in life, the nature and extent of the physical injuries inflicted, whether the same are permanent or only temporary, and the bodily pain, and mental anguish, and any and all such damage, which it appears from the injury will reasonably result to him from such injuries in the future."

Which instructions the court gave as prayed, and to the giving of which the defendant by its counsel then and there excepted at the time.

The defendant upon its part prayed the court to instruct the jury as follows :

"1. On the pleadings and testimony the jury are instructed to find for the defendant.

"2. If the jury believe from the testimony that any witness has wilfully sworn falsely to any material fact then they are at liberty to disregard the whole of the testimony of said witness.

"3. In considering the testimony of a witness the jury are at liberty to determine whether any witness has not the capacity to distinguish between right and wrong, and if the jury believe from the conduct of any witness that he has not such capacity then they will disregard the testimony of such witness.

"4. Unless the jury believe from the testimony that the plaintiff was in the car or train of defendant at the time he was injured, the finding will be for defendant."

The court gave instructions, numbered 2 and 4 and refused numbers 1 and 3 ; to the action of the court, in refusing said instructions 1 and 3, defendant then and there excepted at the time.

I.   The evidence tended to support the claim of plaintiff, and this disposes of the defendant's demurrer to that evidence.

The statement made in the petition that the defendant " stopped " the cars for the purpose of permitting plaintiff to alight therefrom is only the statement of a matter of inducement, and no negligence is charged in doing that act.   That negligence charged consists in permitting the car to be put in motion while plaintiff was in the act of leaving the car.   There was, therefore, no failure of proof, and no variance between the facts alleged and those proven ; and, if there was, the conclusive answer to such a contention is that defendant did not take advantage of the supposed variance in the manner pointed out by the statute, as no affidavit was filed, stating that defendant had been misled.   R. S. 1879, sec. 3565 ; *Turner v. Railroad*, 51 Mo. 501 ; *Clements v. Maloney*, 55 Mo. 352 ; *Waldhier v. Railroad*, 71 Mo. 514 ; *Ely v. Porter*, 58 Mo. 158 ; *Bank v. Wills*, 79 Mo. 275 ; *Olmstead v. Smith*, 87 Mo. 607.

II.   A majority of the court are of opinion the instructions given in behalf of the plaintiff are correct, and that the damages recovered were not excessive.   I do not concur on either of these points.   I regard the instructions faulty under the ruling of this court in *Eswin v. Railroad*, 96 Mo. 290, and that the damages were far in excess of being *compensatory*,—all that plaintiff, under the evidence, was entitled to recover. BLACK, J., concurs with me.   Judgment affirmed.

## ON REHEARING.

BARCLAY, J.—After a second argument and thorough reconsideration of this cause, we adhere to the

conclusion first announced in it, that the judgment should be affirmed.

The statement accompanying the opinion fully presents the salient facts involved, and such other matters in the record as may seem of any note will be mentioned incidentally later.

At the time of his injury the plaintiff was but nine years old. He was a passenger on a street car operated by the defendant as part of a cable-railway line. His evidence tended to prove that he notified the conductor to stop at a certain street. As the car approached it, the conductor rang the bell. Plaintiff left the interior of the gripcar, where he had been seated, and got upon the step of the platform, holding the handrail. The conductor was on the platform. The car slackened speed, but while plaintiff, with one foot off the step, stood ready to descend, it suddenly started forward, with a jerk, and ran some twenty or thirty yards. The jerk threw plaintiff off, and he fell in such a manner that his arm was run over by the wheels of the following car, inflicting serious injuries.

It was the duty of defendant to plaintiff as its passenger, in the circumstances described, to stop the car a sufficient length of time to give him reasonable opportunity to alight in safety at the point of his destination. That he appeared to be of tender years was, moreover, a fact to be considered by defendant in discharging that duty.

If a passenger is evidently crippled, infirm or very young, the duty of the carrier toward him while alighting must be performed with due regard to such apparent condition.

The testimony strongly tended to show a breach of the duty referred to.

Defendant's instruction in the nature of a demurrer to the evidence was, therefore, properly refused, unless plaintiff be pronounced guilty of contributory negligence as a matter of law. That phase of the case

will be discussed in connection with the other instructions.

II.   There was no such variance between the petition and the proofs as would preclude submission of the cause to the jury.   The allegation in the petition that defendant "stopped" the cars to permit plaintiff to alight is mere matter of inducement.   The actual negligence of defendant charged is in permitting the car, on which plaintiff was a passenger, "to be put in motion while plaintiff was in the act of leaving the car without giving him a reasonable time to alight safely therefrom," whereby he was thrown under the car, etc.

There certainly was no failure of proof of these facts, and we think no substantial variance from the pleading.   But, even if it were adjudged that a variance between the allegations and evidence existed, it would be a sufficient answer to defendant's claim for a reversal on that account that no affidavit was made in the trial court, proving that defendant had thereby been misled to its prejudice in maintaining its defense upon the merits.   Without such showing under our statutes, no mere variance can form the basis of a reversal. ( R. S. 1879, sec. 3565; R. S. 1889, sec. 2096; *Olmstead v. Smith* ( 1885 ), 87 Mo. 602.

III.   The chief contention of defendant is that there is error in the rulings of the trial court upon the instructions.

The first one given at plaintiff's instance, it is claimed, submitted to the jury a theory for recovery predicated on the actual stoppage of the car for an insufficient time, whereas the testimony disclosed that no stop at all was made.

This criticism depends on a construction of the language of the court, which we think does not correctly interpret its meaning.

The fact submitted to be found was that the defendant's servant "did not stop a sufficient length of time to permit the plaintiff, acting with reasonable care and

diligence for one of his years, to alight in safety."
This was supported by evidence that though the car,
after the conductor's signal, came sufficiently near to a
rest to induce plaintiff to get into position to step off, it
did not in fact stop at all, but just then shot away with
such violence as to throw him off.

The instruction does not require the jury to find
that the car stopped, but merely that, when it reached
plaintiff's destination, it did *not* stop a sufficient time as
described. The rule of law it stated was entirely cor-
rect and abundantly sustained by the evidence.

It is next asserted that the second instruction for
plaintiff should not have been given. In considering its
effect, however, as part of the law in the case, it should
not be isolated, but read in conjunction with the other
instructions.

The question which it declared to be one for the
jury "under all the facts and circumstances in proof"
was "whether plaintiff had at the time sufficient
capacity and discretion to understand" that the steps
were a more dangerous place than inside the car.

But this was not all. In connection therewith the
jury were told by the first instruction that to entitle
plaintiff to recover they must, among other things, find
plaintiff "acting with reasonable care and diligence for
one of his years."

Reading these instructions together they declare the
principles of law quite as favorably for defendant as
the case allows.

Although plaintiff was a boy, aged only nine years,
he was not absolved from the exercise of all care.

It is true, a remark was dropped in *Dowling v.
Allen* (1885), 88 Mo. 298, to the effect that "no negli-
gence is imputable to a child," but that case was not
ruled on such a theory, and it was obviously too broad
a statement.

While the law makes due allowance for the thought-
lessness and indiscretion of youth it does not hold it

necessarily irresponsible. A child must be very much younger than plaintiff to warrant the court in declaring, as a conclusion of law, that he is incapable of negligence.

To the extent that a child has knowledge and understanding of a danger or where it is of such nature as to be obvious even to one of his years he is under a legal duty to avoid it.

So in the case in hand the plaintiff was certainly bound to use some degree of prudence and foresight to avert injury in the circumstances of his situation. The standard of his duty was such reasonable care and diligence as characterized the average boy of his age. He would be legally responsible for a failure to exercise such care. *Railroad v. Gladmon* ( 1872 ), 15 Wall. 40 ; *Moynihan v. Whidden* ( 1887 ), 143 Mass. 287 ; *Ostertag v. Railroad* ( 1877 ), 64 Mo. 424.

In the light of the facts it was rather favorable than otherwise to defendant to suggest ( in the second instruction ) the possible inference that plaintiff assumed a dangerous position in getting on the step. The proof was that he remained inside the car till the conductor gave the bell-signal to halt, then went out to the platform and got upon the step awaiting the moment when the car would come to a full stop. His entire conduct in the premises was entitled to consideration in determining whether he exercised ordinary care. Even if he were aware that a position on the step was more dangerous than inside, it would not necessarily follow as an inference of law or fact, that he was guilty of negligence in getting on the step when he did, in the circumstances.

But if there was any error in the instruction in this regard it was not to the prejudice of defendant. R. S. 1889, sec. 2100.

Any language in it which may be supposed to resemble the instruction criticised in *Eswin v. Railroad*

( 1888 ), 96 Mo. 290, is relieved of any possible misleading tendency by the submission to the jury as an issue of fact, in the first instruction, of the question whether plaintiff was " acting with reasonable care and diligence for one of his years."

There is no substantial difference in effect between the terms "ordinary care" and "reasonable care" as the latter was used in that instruction. *Beers v. Railroad* ( 1849 ), 19 Conn. 570 ; *Lynch v. Nurdin*, 1 Ad. & Ell. N. S. 36 ; *Neal v. Gillett* ( 1855 ), 23 Conn. 437.

Taking these instructions conjointly we think they contain no material error to the detriment of defendant's substantial rights.

It is next urged that the trial court should have given the refused instruction, numbered 3, directing the jury to ignore the testimony of any witness regarded by them as incapable of distinguishing between right and wrong.

Whatever view may be taken of the competency of the minor plaintiff as a witness, it is clear that no error was committed in refusing that instruction, predicated on such incompetency. That issue was one for the court, not the jury, to try.

However, as defendant also objected to him during his examination, duly excepted to his admission and made that ruling a ground of the motion for new trial, this point must be further considered.

The test of competency of children as witnesses in this state is established by the statute declaring the following persons "incompetent to testify," viz.: " Second, a child under ten years of age who appears incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." R. S. 1879, sec. 4017 ; R. S. 1889, sec. 8925.

Under this law a child under ten is presumptively incompetent ; but the issue of such competency is peculiarly one for the trial judge, and we will not

Ridenhour v. The K. C. Cable Ry. Co.

reverse his ruling on such a question unless it affirmaatively appear that there has been an abuse of discretion.

The fact that the court permits a witness to testify, after objection made on account of his youth, is to be accepted as a ruling that it was satisfied, upon personal inspection and observation, that he was capable of receiving just impressions of the facts about which he was called, and of relating them truly.    But in the case at bar there is more than that.

On cross-examination defendant began an inquiry of the witness on this subject and the following colloquy (as shown by the bill of exceptions) ensued, viz. :

"Q.   What did you understand that you were doing when you held up your hand, and the man said something to you ? what did you understand was being done ?   A.   Nothing, as I know of."

RE-DIRECT EXAMINATION :

"Q.   You were asked to hold up your hand ?"

By Mr. Johnson:   "I am going to object right away to that kind of questions.

"Q.   When you held up your hand and was sworn to tell the truth, the whole truth in this case, what did you understand you were going to do ?"   Objected to by defendant's counsel.   Objection overruled by the court, to which ruling of the court the defendant, by its counsel, then and there at the time duly excepted.

By the court :   "Do you know what will become of you if you do not tell the truth in this case ?   Say, Albert, do you know anything about that ?   A.   No sir."

By plaintiff's counsel:   "What do you understand in reference, if anything, to the punishment of boys if they appear as witnesses in a case and tell a falshood, do not tell the truth, where will they go when they die ?   A.   To the bad place.

VOL. 102—19

"*Q.* They will be punished if they do not tell the truth ? *A.* Yes sir."

### RE-CROSS EXAMINATION.

"I never talked with anyone about this. No one told me that I would have to tell about it here in court. I did not know until I came up here this morning that I would have to tell about it. If that is not true, I will go to the bad place."

### RE-DIRECT EXAMINATION.

"I talked to Captain Waters about how I got hurt."

### RE-CROSS EXAMINATION.

"I talked with Captain Waters, he asked me, but no one but him, he did not tell me what I would have to swear to ; I knew if I did not tell the truth, I would go to the bad place ; learned it in Sunday School."

Furthermore the *verbatim* report of plaintiff's entire testimony plainly tends to show that he was competent under the statute. His story is told clearly, plainly and apparently with candor. On the point where exaggeration might naturally be expected and would obviously be to his interest, namely, in respect to the nature and extent of his injury, it is entirely wanting. His account of the accident is strongly corroborated by several disinterested eye witnesses. His employer ( who kept a fruit stand ) also testified that the boy was earning fifty cents a day and board as an assistant in business at the time of the accident.

Instead of proving the contrary we think this record affirmatively indicates that he fully met the requirements of the law respecting competency.

Something has been said upon the rehearing about the large amount of plaintiff's damages ( $8,500 ), and the intimation is thrown out that they are excessive. But as no such objection to the verdict was made in the

motion for new trial that matter is not a proper subject to review.

"No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court." R. S. 1879, sec. 3774 ; R. S. 1889, sec. 2302.

No point has been made in this court ascribing error to the third instruction for plaintiff, defining the measure of his damages.

The judgment is affirmed with the concurrence of all the judges, except Sherwood, J., who dissents.