Hull, J.
This action is brought to reverse the judgment of the court of,' common pleas. The plaintiff in error was the plaintiff below, and a verdict was returned against him at the trial, and judgment, entered upon that verdict.
The action below was to recover for personal injuries which thb plaintiff claimed he had sustained on' account of negligence of the city.. He complains in', his petition that on or about October 30, 1899,- he was walking along the platform of Market space, on Superior street,- between Monroe street and Washington street,, and that about the middle' of the platform, a set of scales had been removed which formerly stood there,' leáving a hole some four or five feet or more in depth. It is alleged that it was in the night; that he did not see the hole, and that he fell into it and was injured.
"The answer is in the way of a general denial and alleges that if the plaintiff was injured, it was on account of his own negligence. . ,
Tt is complained that the verdict and judgment are against the weight of the evidence; are not sustained by sufficient evidence; that the court erred on' the trial of the case, and especially in its charge to the jury.
While the plaintiff alleged in his petition that he was walking on the market platform at the time he fell into the hole, he testified upon the trial that this was not the fact; that he was in fact walking on the street, on Superior street, crossing the street, at the place where the scales had been, going east, and that in that way he fell into the hole. The plaintiff testified-that he lived somewhere in the western part of the city; that he had been on Summit street and then came upon Monroe street to Superior street, to the western end of Market space. There he made a small purchase, then turning down Superior street, south or east, with the intention of going down that street and finally reaching his home in that way, but that, when hé was about half way between Monroe street and Washington *457 street, he concluded to turn off to the east and go through the opening between the platforms of the market place, where the scales had been, and by way of an alley which ran east, and reach St. Clair street and there take a car. He turned off at. this point and started across Superior street in an eastward direction, as he claims, for the purpose stated, and when he' reached the platform on Market space he'undertook to walk through where the scales had been and fell into the'hole caus'ed by their being taken out that day. He had three of his rihs' broken and was otherwise seriously injured.' '
'It is claimed on the part of the. city that' whatever errors1 may have been committed by the trial/court, they are not prejudicial, for the plaintiff was not entitled to recover. It is claimed that he was going where he. had no' right to go and uding a part of the street which he had no right to:use, except at! his own risk,' using it for his own convenience, 'his own pur-’, pose; that instead'of keeping upon the sidéwálk he'walked' out' into the street, and that in'so doing he took his own risk,, and if he was injured, no cause of action' arose against the city-
Two decisions of the supreme court are cited to sustain this contention, one being Kelley v. Columbus, 41 Ohio St., 263, where the court says in the syllábus:
“A city is not liable for an injury resulting from the unsafe or dangerous condition of lands adjacent to a street where thp place of danger is so far from the street that no injury can result to persons in the ordinary and proper use of the street.
“The owner of land is not liable for injury resulting from the unsafe or dangerous condition of his premises, to persons who go upon them without invitation express or implied.
“The fact that a pavement was continuous from a sidewalk on. a street over the adjacent lands to the place of danger, was not, of itself, an implied invitation to a person on the sidewalk to go upon the adjacent lands.”
Kelley was walking along the street in Columbus, in the vicinity of the city hall, and for the purpose of answering a *458 call of- nature, he stepped off the sidewalk and walked across - the pavement and to the east side of the building in the night season. This building was some thirty feet away from the sidewalk. He fell into an open area and received an injury. The supreme court held that where- he fell was no part of the sidewalk; that he had no invitation to go there, and if he saw fit to use this place for that purpose, when he might have kept on the sidewalk, he did so at his own risk, and if he was injured, there could be no recovery.
The other case relied upon is Dayton v. Taylor, 62 Ohio St., 11. The party in this case slipped and fell or slid into a catch-basin in the street. He was going across the street diagonally where there was no sidewalk, and the supreme court say, in the syllabus:
“A pedestrian who, without necessity, and for his own pleasure and convenience, departs from the sidewalks and street crossings, upon which he would have avoided injury, and crosses a street intersection diagonally, and is injured by slipping into a catch-basin which lay between the crossings, must be held to have assumed the risks which' lay in the path ■ which he thus chooses.”
So that under these authorities, if Nitz deliberately left the-sidewalk and traveled over a part of the street not intended, to be traveled upon, for his own purpose and his own convenience, the city would not be liable.
But the evidence shows that he walked in a southerly direction upon Superior street, upon the west side of it, where-there was a sidewalk, and that in the middle of the street, between Monroe street and Washington street, was a market house or market shed, which consisted of a platform with a roof over it at that time. . The platform is perhaps fifteen feet in width and is used by market men in the middle of the day. This market shed consisted of two parts, and midway between them was this opening for the scales, where they had been for many years, and the evidence shows that from these scales on each side there was a sidewalk to the edge of Superior street, the sidewalk running from the point where Nitz turned off to go to St. Clair street to the opening between the platforms where the scales were, extending to the edge of the opening' *459 northerly, and on the other side of the platform there was gi sidewalk running' to the easterly side of Superior street and ending nearly in front of the city police station, or city hall.
' -These scales, which were large ones,, used -for the purpose cf weighing wagons, had a* platform as long as the market platform was wide, and the platform of the scales was about ten feet in width; they had been used for many'years by the public for the purpose of travel, some of the witnesses saying that hundreds of people went through there every day an} night, and, according to the testimony, used it as a part of thg street, and there was on the easterly side of Superior street^ an alley running to St. Charles street, which was immediately opposite this opening made by the scales, so that. Nitz, when? he undertook to go from Superior street on its western sidé over to St. Clair street, was not departing from the usual route of travel, but was in fact walking upon a sidewalk that waá laid across Superior street from each side of the market house, and was undertaking to walk upon the scales which had beeft used for many years by people in passing and repassing over this street.
So that, in our judgment, this case does not come within-the rules of the two cases referred to, and Nitz was not a person who was rambling or roaming about in places where he had no business to go, and therefore, if he was hurt, no liability would arise. The evidence shows, as suggested, that the alley referred to was very much used, and had been for many years^, by persons walking from Superior street to St. Clair street^ and it was this alley that Nitz was proposing to walk througft on his way to take a car on St. Clair street. 'The scales weré taken out at noon and the hole left without light or'guard except possibly a pile of earth, and Nitz fell in that night.
The question remaining is whether the court erred on’the trial of the case, in its charge to the jury. If Nitz walked upon the street, as he claims, and in fact walked in the ordinary way where he had a right to go and where people were accustomed to go, he was entitled to have exercised towards him ordinary cate on the part of the city in keeping ifs streets and' alley-way£ in repair, and if an excavation was made in the street, by th¿ city, or with its knowledge and authority and negligently left *460 without.light .or guard, and.Nitz, without any negligence on his: part, fell into it; he would be estopped to recover.
There.are'-different portions- of the charge .that .are complained o.f. -And first, on page 113 of the record, where the court said to the jury.;
.'■‘‘■Under the issues in this case, therefore, you must determine, first,-whether the point -in question'at which the plaintiff claims to have been injured, was a public street? If it was not, but was -rather merely, a part of Market space, then the duty of the city toward the plaintiff is different from what it-otherwise would be — provided you -find from the testimony that he was using it as a-street. - If the city of Toledo had devoted this space to market purposes, and was so using it, and not for' street purposes,' then it was the duty of the city to exercise ordinary care in the control of -this space to prevent ih'jury to a-citizen who was using it for the purposes -to which it--ivas devoted. It is not incumbent-upon the. city'to care for market spaces — market houses — in the same manner-that it is tte care for its streets, and the question for you to-determine hi this case is, whether the city of Toledo neglected- any. duty that it owed to this plaintiff in this.matter? If this shéd, through its .-extent, from Washington street to Monroe street, ■fras so constructed that it could properly be used ánd was. properly used only for market purposes by the citizens generally, then a person who went upon this shed and platform merely for his own convenience — because it suited his purposes fetter to walk over that than it did to walk over the streets and sidewalks which are intended for the use of foot passengers, #Ut of the market hours, when the ordinary uses of the market are not supposed to be there, and an accident happens and he falls from the shed and suffers an injury, he takes the burden qpon himself. If he is there after such a time, simply for 1ns qwn purposes, without any invitation on the part of the city, express and implied, he must suffer the consequences of any. -injury that happens to him as a result of his being there.”
< That portion of the charge is objected to, and it is claimed that it was erroneous and misleading. There was evidence ¡fending- to show two witnesses testified that Nitz was in fact’ talking, upon the market platform when he fell off '; one wife *461 ■ness saw him walking along and saw him fall into the hole. Another witness, at a saloon near by, testified that his attention was called to a man coming down the market shed at this time} that his attention was drawn another way for a moment, and that his little girl told him that somebody had “fallen into thé scales,” and this was found to be Nitz. So the evidence was conflicting as to whether he fell in off the platform ‘or from Superior street.
The evidence showed that this platform has been used by ‘ people generally in walking back and forth whenever they saw fit, as a portion of the street, making a very convenient place for walking, being a board platform with a shed over it extending from Monroe to Washington street, running dow.tt through the middle of the street, and there were steps there, for the use of people not only during market hours, but which were used at all times, and at the opening where the scales were, there were steps down either side for the convenience of people who wished to pass from one platform to.the other, two sets of steps.
In our opinion, if this had been used as a street for a long time by people generally in that part of the city and by others who mio'ht come there, and if they were accustomed to walk back and for'h upon this platform,, in the night time and in the day- time, as the testimony showed, although this platform was built for market purposes, yet if the people were permitted to use it as a street, and if they did so use it generally as á street, and if this p’ace where these scales were, was used as á street, the city might be liable for taking out the scales and leaving an-onening some six or seven feet deep from the top .of the platform, without any guards, railing or lights, as this opening was left that night. It would be putting into the path of travelers a new danger that was not there before, and in a path that they had been permitted to use for a long period of years, and although Nitz may have gone out of his way wheti he went upon the platform, although he might have walked uoon the street, yet he was not a trespasser in walking upoti this platform, and if the scales had been used there as a street for a long period of years with the knowledge of the .city, theP when he stepped off the platform he was stepping upon what *462 he had no right to suppose was a street and' which had been jised as a street for a long time, and we think that the court below was in error in charging the jury in substance that if that platform was used for market purposes and originally Intended for that use only, and if Nitz was walking upon it for his own convenience, that the city would not be liable under £ny circumstances if it removed these scales and thus made a ¡deep pit which Nitz fell into, and this portion of the charge ■may have misled the jury, from the fact that the evidence was conflicting as to whether he was walking upon the street or Upon the platform, and probably was prejudicial to the plaintiff upon the trial of the case.
On page 115 of the record is a portion of the charge which is complained of. The court said to the jury:
“If he was guilty of negligence, he cannot recover in this action, although you may find from the testimony that the defendant, the city of Toledo, was negligent, as claimed; if the negligence of the plaintiff contributed in any degree to the bringing of this inj ury upon himself, there can be no recovery.”
Prior to this passage in the charge, the court had called attention to certain things which would constitute negligence on the part of Nitz, to-wit, that if, notwithstanding the obstructions, if any were there, he walked into this hole, that would constitute negligence on his part. Of course, negligence of that kind would contribute directly to his injury, and to that portion of the charge there could be no objection, but the court follows it up with this general instruction, that if the negligence of the plaintiff contributed in any degree to bring this injury upon himself, there can be no recovery.
This instruction, it seems to us, while it may not have been prejudicial to the plaintiff and if it stood alone, might not be sufficient to reverse the case, is in direct conflict with the law as laid down in Schweinfurth v. Railway Co., 60 Ohio St., 215, where the Supreme Court say, in the second paragraph of the syllabus:
“In an action for negligence, it is not error to refuse an instruction that the defendant cannot be held liable, though guilty of the negligence charged, if the negligence of the person injured contributed in any decree, or in any way to .the injury of which he complains. Unless the negligence of the *463 person injured contributed directly to, or was a proximate cause of the injury, it does not preclude a recovery.”
And in the opinion, the court discusses the question at considerable length, citing a number of authorities, and they hold that it is not sufficient if the negligence contributed in a remote, or perhaps in the remotest degree, to the injury. That the rule is the same as to the plaintiff in an action for negligence that it is as to the defendant, and the negligence to bar :a recovery must have contributed in some degree directly to the injury complained of. In Matthews v. Toledo, (this case has just been affirmed by the Supreme Court), reported in 21 O.C.C., 69, this court held a charge erroneous, that if plaintiff’s own negligence contributed in any degree to the bringing of this misfortune upon herself, she is not entitled to complain of the city of Toledo, although the sidewalk may' have been defective and the officers of the city having those matters in charge may have" been guilty of negligence in failing to repair or remedy that defect. Unless the negligence of the person- injured contributes directly to, or was a proximate cause of, the injury, it does not preclude a recovery.
This ins', ruction of the court being contrary to this express holding of the Supreme Court of the state upon this question, we must find to be erroneous, and to that extent there was error in the charge of the court.
It is complained further that the court erred in its charge to the jury on the question of notice. After the court had finished its general charge, the city solicitor said to the court: “I think your Honor has overlooked the question of notice, either actual Nor constructive.” And the court said, among other, things, in response to this:
“If you find from the evidence in the case that the hole was left there, not by reason of any procurement of the city, or of those having charge of the matter, then the city council, or the street commissioner, or the parties who were placed in control of the street, are entitled to notice of this defect. There is no evidence in this case that actual notice was brought to the knowledge of the street commissioner of the existence of that hole, or of any of his employes, and before the city could *464 be held for the negligence of the common council, or of the ¡-street commissioner, or of his employes in that regard, it' is necessary that the hole should have been there for sitch a length of time as in the exercise of ordinary prudence these officials having the matter of the protection of the streets in charge would have known of its existence. In such cases, that is to say if this hole were there for such a length of time before the plaintiff was injured as that in the ordinary performance of their duty and the exercise of care on their part, those having the streets in charge would have known of the defect, then the city had constructive notice knowing of this defect, and having had time to correct it, would have had constructive notice, which would renaer the city liable, provided the plaintiff was injured without any fault on his part.”
The charge in effect instructed the jury that there was no evidence of actual notice to the. street commissioner of the existence of the hole, and that before the city could be held for negligence it was necessary, 'that the hole should have been there for such a length of time, etc., and prior to that the court had said to the jury:
“If the city of Toledo through its officers entrusted with the matter of placing scales on this spot, knew of the removal of these scales, and if the removal of the scales which were there by the authority of the city, necessitated the leaving of a Hole in the street, then it was the duty of the city, or of those having this matter in charge for the city, to see that it was properly guarded, so that those using the street in a proper way, might not be injured. If this hole was made there, however, and the officers of the city having the matter in charge — having the protection of the streets in charge — or the removal of the scales in charge, had no knowledge of such removal, then they were entitled to reasonable notice, so they could protect this place by placing uuards, or in some way putting it into position so that persons liable to be injured there would be protected.
The trend of this instruction is that it is necessary that some officer of the city who had charge of the streets, such as the street commissioner, should have had knowledge of the making of this hole or of the removal of these scales.
The undisputed facts are that Mr. Mulhenny had leased these scales from the city in 1896, for a certain amount per *465 year, and that he had occupied the scales until August, 1899, a short time before this accident occurred, when the city council, by formal resolution, leased these scales to a man by the name of Otto and thereby terminated their relations with Mr. Mulhenny; but Mr.- Mulhenny not getting out, on October 27, three days before this accident occurred, the city, through a police officer, whose duty it was to serve notices for the city, notified Mulhenny to remove his scales and give way to Otto,an l within three da>s after, to-wit, on October 30, Mulhenny removed the scales, and after removing then went to the city auditor and notified him personally that he had removed the ■scales, and the city auditor, on the same day, informed Otto that the scales had been removed and that he could move in, pursuant to his contract with the city. So that the undisputéd evidence in the case in fact showed that these scales were removed by the authority and direction of the city; Mulhenny removing them on October 30, by reason of a personal notice which he had received three days before from Officer Knapp to remove the scales and make way for Otto.
It is hard to see how the city could claim that it had no notice of the removal of these scales when they had been removed by its express authority and direction. If the city ordered the removal of the scales, it certainly had knowledge of their removal and that a hole four or five feet deep, below the level of the street, would be created. And we think the court should have instructed the jury that if this resolution was passed by the council, as the evidence shows it was, and if Mr. Mulhenny was notified by the city to take his scales out, that that would constitute notice to the city that an excavation would be exposed and left there. And, more than that, the undisputed evidence is that Mr. Kohn, the superintendent of the market, was present and saw the scales removed. It took about a day and a half to take them out, and we take it that one of the duties of the superintendent of the markets would be to see that the market place was not rendered dangerous eithér by obstructions or by excavations, and that the actual knowledge and presence of the market superintendent when this hole was being made, would be some notice to the city of the *466 fact that there was an excavation there.
B. L. Turing, for Plaintiff in Error.
M. R. Brailey, for Defendant in Error.
For these reasons, in our judgment, this instruction to the jury was misleading and erroneous under the undisputed facts •of the case and may, and probably did lead the jury to conclude that inasmuch as these scales were taken out at noon and this accident happened that evening, that there was no constructive notice, and that no actual notice being shown to the street commissioner or other person having the street actually in charge, that therefore the city would not be liable for this injury, and we think, under the evidence in the case, this instruction ought not to have been given; the jury should have been charged that if the facts were as the plaintiff claimed, that constituted notice to the city without any further notice to anyone. On this question of notice to a city, where it has authorized an excavation to be made, a decision of this court, where the opinion was rendered by Judge Scribner, is in point. In Gable v. Toledo, 16 O. C. C., 515, the first paragraph of the syllabus is:
“A city having authorized an excavation to be made upon a public street, which is necessarily dangerous to the public, is bound to see that such excavation is properly guarded. It is not necessary, therefore, in order to recover for injuries received from such an excavation, left unguarded, to show that the city had knowledge that it was being allowed to remain in a dangerous condition; that on nights previous to the accident it had been left unlighted. Testimony tending to prove such facts is therefore immaterial.”
The question is discussed at some length by Judge Scribner in the opinion and the authorities cited, and it finally comes down to this: That a city cannot complain that it does not have notice of a thing which it itself directs and authorizes, for that is notice.
We find no other errors in the record, but for those to which attention has been called, the judgment of the court of common pleas will be reversed and the cause remanded for a new trial. !

. L. Twing, for Plaintiff, cited:
Iron R. R. Co. v. Mowery, 36 Ohio St. 418, 419; Russell v. Columbia, 74 Mo., 480; Booth on Street Railways, sec. 409; Ridenhour v. Railway Co. 102 Mo., 270; Schweinfurth v. Railway Co., 60 Ohio St., 215; Sherman & Redf. Neg., sec. 94; Sproul v. Seattle (City), 17 Wash. Rep., 256; Kansas City v. Orr, 8 Am. Neg. Rep., 36; Stewart v. Ripon, (City), 38 Wis. Rep., 585; Sherman & Redf. Neg., sec. 358; Haniford v. Kansas City 103 Mo., 172; Abliene (City) v. Cowperthwait, 52 Kansas, 324; Blessington v. Boston, 153 Mass., 409; Henry v. Railway Co,. 113 Mo., 525; Collins v. Council Bluffs (City), 32 Iowa, 324; Fritsch v. Allegheny (City), 91 Pa. St., 226; Chicago (City) v. Babcock, 143 Ill., 358; Goshen (City) v. Alford, 154 Ind., 58; Rehberg v. New York (City), 91 N. Y. Rep., 137; Brusco v. Buffalo, 90 N. Y., 679; Twogood v. New York (City), 102 N. Y., 216; 32 Iowa, 324; Ketcham v. Buffalo, 14 N. Y., 356; Wartman v. Philadelphia, 33 Pa. St., 202; Smith v. Newbern, 70 N. Car., 14; Wade v. Newbern 77 N. Car., 460; Lax v. Corp. of Darlington, L. R., 5 Ex. Div., 28; 48 L. J., Q. B., 143; Jersey City v. Railroad Co., 40 N. J. Eq., 417; sec. 2640, Revised Statutes; Circleville v. Neuding, 41 Ohio St., 460; Zanesville v. Fannan 53 Ohio St., 605, 617; affirmed in Zanesville v. Spoerl, 54 Ohio St., 634; Circleville v. Sohn, 59 Ohio St., 258, 306; Middleport (Vil.) v. Taylor 2 O. C. C., 366; Durbin v. Napoleon, 21 O. C. C., 160; Gable v. Toledo (City), 16 C. C., 515; Newark v. McDowell, 16 C. C., 556; s. c., 60 Ohio St., 599; Matthews v. Toledo 21 C. C., 70; Hewitt v. Cleveland (City), 21 C. C., 205.